TEXAS COMPANY *v.* BROWN, INDIVIDUALLY AND AS COMMISSIONER OF AGRICULTURE OF GEORGIA, ET AL.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF GEORGIA.

No. 126.   Argued October 13, 14, 1921.—Decided April 17, 1922.

1. The Georgia laws, (Civil Code §§ 1800–1814 as amended; Penal Code §§ 639, 642) providing for inspection of oil and gasoline and collection of inspection fees, are to be construed as remaining applicable to products stored within the State or sold in internal commerce, even if invalid as applied to interstate commerce, in view of the declaration to that effect in the Act of August 17, 1920 (Ga. Laws 1920, No. 800).  P. 473.

2. A statute bearing on the right to an injunction must be given effect by an appellate court though enacted pending the appeal. P. 474.

3. As applied to oil and gasoline in interstate commerce, state inspection fees imposed without the consent of Congress and so clearly exceeding the cost of inspection as to amount to a revenue tariff, are unconstitutional.  P. 475.

4. Goods imported into one State from another, which have reached their destination and are held in storage in the original packages awaiting sale, are subject to nondiscriminatory state taxation. P. 475.

5. A tax levied in respect of goods of a particular kind is not to be held a discrimination against interstate commerce merely because goods of that kind are not produced locally but are all imported from other States.  P. 476.  *Askren* v. *Continental Oil Co.*, 252 U. S. 444.

6. Oil and gasoline imported from another State in tank cars not used for indefinite storage or as distributing tanks for local sales, remain in interstate commerce and not subject without the owner's consent to local inspection fees amounting to taxation until unloaded.  P. 477.

7. The Georgia laws, *supra*, provide for inspection of illuminating oil and gasoline and for inspection fees, yielding revenue in excess of inspection cost, fixed at higher rates per gallon for small quantities than for large, and imposed once only, in connection with the

inspection, viz., upon dealers at the time of first domestic sale or during storage preliminary to such sale, and upon persons who buy or bring in these products for their own local consumption, the latter enjoying an exemption from paying more than a specified total annually which does not apply to dealers. *Held*, that the charge, as applied to local transactions, is an excise, and is
(a) Not arbitrary or unreasonable, in violation of the Fourteenth Amendment. P. 479.
(b) Nor contrary to Art. 7, § 2, par. 1, of the Georgia Constitution, which requires uniform valuation of all property subject to be taxed and that all taxation shall be uniform on the same class of subjects and levied and collected under general laws. P. 480.
266 Fed. 577, affirmed.

APPEAL from a decree of the District Court refusing, in part, an application for an interlocutory injunction in a suit brought by the appellant to restrain the appellees, officials of Georgia, from enforcing laws of that State imposing inspection fees, in respect of oil and gasoline brought in by the appellant from other States.

*Mr. John M. Slaton* and *Mr. Harry T. Klein*, with whom *Mr. James L. Nesbitt, Mr. Luther Z. Rosser, Mr. Benj. Z. Phillips* and *Mr. Stiles Hopkins* were on the brief, for appellant.

The Georgia legislation is to be construed as providing for inspection and not for a privilege or excise tax. If the inspection fees were intended as a general source of revenue, fairly imposed upon the business of selling oil, it is hardly conceivable that the legislature would have imposed them solely upon the first sale instead of upon every one selling oil and its products.

If the tax be a property tax, it is violative of the provision of the Georgia constitution requiring all property taxes to be ad valorem.

Under this legislation, the privilege of storage occasions no charge against any citizen who stores after inspection; the charge is only against the original importer. The

case is indistinguishable from *Standard Oil Co.* v. *Graves,* 249 U. S. 389.

The right to sell is an integral part of interstate commerce. *Gibbons* v. *Ogden,* 9 Wheat. 1; *Brown* v. *Maryland,* 12 Wheat. 419; *Foote* v. *Maryland,* 232 U. S. 494; *General Oil Co.* v. *Crain,* 209 U. S. 211; *Red "C" Oil Co.* v. *North Carolina,* 222 U. S. 380; *Neilson* v. *Garza,* 2 Woods, 287; *Pure Oil Co.* v. *Minnesota,* 248 U. S. 158; *Standard Oil Co.* v. *Graves,* 249 U. S. 389; *Schollenberger* v. *Pennsylvania,* 171 U. S. 22; *Sioux Remedy Co.* v. *Cope,* 235 U. S. 197; *York Mfg. Co.* v. *Colley,* 247 U. S. 21.

As a tax, the excessive inspection fees constitute an arbitrary and discriminatory burden on interstate commerce. The tax is levied only on the first or original sale of these products and it is admitted in the pleadings that no oil is produced in Georgia.

The tax viewed as an excise or privilege tax is directed against the products of other States because all of such products must come from other States. *American Fertilizer Co.* v. *Board of Agriculture,* 43 Fed. 609. Neither is the tax rendered valid by the fact that it applies to internal as well as external commerce. Discriminatory taxes against articles from other States are void. *Webber* v. *Virginia,* 103 U. S. 344; *Leisy* v. *Hardin,* 135 U. S. 100; *Lyng* v. *Michigan,* 135 U. S. 161; *Welton* v. *Missouri,* 91 U. S. 275. When consignment is made direct to the customer for his own use the oil can not be at any time in intrastate commerce. *Walling* v. *Michigan,* 116 U. S. 446; *Schollenberger* v. *Pennsylvania,* 171 U. S. 1.

The Texas Company is entitled to invoke the protection of the Constitution, whether the tax falls on sales made by it or by its customers importing such oils; the burden on interstate commerce is the same. *Savage* v. *Jones,* 225 U. S. 501; *United States Glue Co.* v. *Oak Creek,* 247 U. S. 328; *Crew Levick Co.* v. *Pennsylvania,* 245 U. S. 292.

The difference between the power of the State to tax goods and an authority of the State to interfere with the introduction and disposal of goods in interstate commerce is clearly drawn in *American Steel & Wire Co. v. Speed,* 192 U. S. 522. The power to tax the sale of an article in consummation of its interstate commerce shipment is very different from the power to tax that article together with all other property in the State upon which the burden of a valid law might equally fall. *York Mfg. Co. v. Colley,* 247 U. S. 21; (*Askren v. Continental Oil Co.,* 252 U. S. 444, distinguished); *Pure Oil Co. v. Minnesota,* 248 U. S. 158.

The tax is violative of the Fourteenth Amendment. On its face the imposition of inspection fees amounting to five times the cost of inspection is arbitrary and unfair. It takes the same length of time to inspect 50 gallons as 8,000 gallons of oil, and yet the tax is in proportion to the amount. It is a tax only upon the first sale. It is an arbitrary assessment. *Southern Ry. Co. v. Greene,* 216 U. S. 400. As only the first vendor is taxed, the law carefully excludes the citizens of Georgia from the payment of these excessive fees, although engaged in the same business.

Arbitrary selection cannot be justified by calling it a basis of classification. *Royster Guano Co. v. Virginia,* 253 U. S. 412; *Gulf, Colorado & Santa Fe Ry. Co. v. Ellis,* 165 U. S. 150; *Cotting v. Kansas City Stock Yards Co.,* 183 U. S. 79; *Connolly v. Union Sewer Pipe Co.,* 184 U. S. 540.

The tax is violative of the state constitution. *Beckett v. Savannah,* 118 Ga. 58.

*Mr. Mark Bolding,* with whom *Mr. Albert Howell, Jr., Mr. P. H. Brewster* and *Mr. Arthur Heyman* were on the brief, for appellees.

MR. JUSTICE PITNEY delivered the opinion of the court.

This is a suit in equity by appellant, a corporation and citizen of Texas, against appellees, both individually and as officers of Georgia, to restrain enforcement of laws respecting fees for inspection of petroleum and petroleum products, especially kerosene oil and gasoline, so far as concerns products brought by plaintiff from other States into Georgia and there disposed of.

The laws in question, as they stood when suit was commenced (March, 1920), comprise provisions found in Georgia Civil Code, 1910, §§ 1800–1814, which originally referred only to illuminating oils; an amendatory Act of August 19, 1912 (Laws 1912, No. 570, p. 149), which extended the inspection system to gasoline; an amendatory Act of August 19, 1913 (Laws 1913, No. 258, p. 110); and certain sections of the Penal Code, 1910. They provide for official state inspection of petroleum and petroleum products; prescribe tests relating to their fitness for use—a flash test for illuminating oils, a specific gravity test for gasoline—and establish inspection fees dependent upon the quantity inspected but at a higher rate per gallon in small quantities than in large, the fees being fixed, however, upon a basis that has been found in practice to yield revenues substantially in excess of the cost of inspection. The officials in charge of enforcement of the system, here made defendants, are the commissioner of agriculture, a general inspector of oils, and numerous local inspectors, whose duties are set forth in the cited code sections and in the Act of 1912. Among other provisions for rendering the acts effective, § 639 of the Penal Code makes it a misdemeanor to sell or offer for sale illuminating fluids in violation of the pertinent provisions of the Civil Code, and § 642, to sell or keep for sale, or in storage, crude or refined petroleum, naphtha, kerosene, etc., without having the same inspected and approved by an authorized inspector.

The federal jurisdiction was invoked both because of diverse citizenship and because the suit arose under the Constitution of the United States. Upon the merits, questions of state law were and are raised, as they may be (*Greene* v. *Louisville & Interurban R. R. Co.*, 244 U. S. 499, 508), in addition to federal questions.

Enforcement of the inspection fees was and is resisted upon the ground that they constitute an arbitrary and unreasonable exaction, not sustainable as a fair exercise of the taxing power but invalid as violative of the guarantee of due process of law contained in the state constitution, as well as that in the Fourteenth Amendment.

A more specific objection is that the imposition of the fees is in conflict with Art. 7, § 2, par. 1, of the state constitution, which provides: "All taxation shall be uniform upon the same class of subjects, and ad valorem on all property subject to be taxed within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws."

But the contention most emphasized is rested upon the commerce clause of the Constitution of the United States, the insistence being that inspection fees exceeding the cost of inspection, as imposed upon plaintiff's products, constitute a burden upon interstate commerce. As to this, defendants denied that the laws in question by proper construction applied, or as enforced by the state officers were made to apply, to plaintiff's products while in interstate commerce; they averred that inspections were not required to be made, nor fees to be paid, until after the products had arrived at destination in the State and were held in storage by the consignee for the purposes of sale in the State.

Upon amended bill and answer, and affidavits *pro* and *con,* an application for interlocutory injunction was heard before three judges pursuant to § 266 Judicial Code as amended March 4, 1913, c. 160, 37 Stat. 1013, and re-

sulted in a decision June 28, 1920 (one judge dissenting), pursuant to which an injunction *pendente lite* was granted restraining the collection of inspection fees in respect to kerosene oil, gasoline or other petroleum products of plaintiff brought into the State of Georgia from other States and intended to be sold in the original packages, and so sold; but injunction was refused, and restraining orders theretofore granted were dissolved, as to products brought in for indefinite storage within the State, or for sale after breaking the original package, after completion of the interstate transportation. 266 Fed. 577. An appeal was taken by plaintiff direct to this court, as authorized by § 266 Judicial Code.

The controlling facts are not in dispute. Plaintiff carries on in Georgia an extensive business in the distribution and sale of illuminating oil and gasoline. Neither commodity is produced in Georgia, and all plaintiff's supplies for that State are brought from points in other States, principally by rail in tank-cars owned by plaintiff, having a capacity of approximately 8,000 gallons each. Plaintiff has thirty-four local agencies or distributing stations at different points in the State, at which are stationary storage tanks for oil and gasoline respectively, pumps and other apparatus for transfe.ring the products from tank-car to storage tank, and either a railroad siding, or (in a few cases) a private track in proximity to the storage tanks. Plaintiff also maintains wagons for the delivery of oil and gasoline from the stationary tanks to its customers. The principal part of its products comes to the distributing stations consigned to plaintiff or its manager or agent. As a rule, and as a part of plaintiff's own system, as soon as one of the tank-cars is started from the point of origin outside the State, a request for inspection together with a check for the inspection fees is forwarded by plaintiff to the local inspector nearest the point of destination, notifying him that the shipment is en route and re-

questing him to give it immediate attention upon arrival. Upon its arrival the local agent notifies the inspector, who thereupon, in compliance with the previous request, inspects the oil or gasoline by taking a sample from the tank-car, after which its contents are conveyed to and into the storage tank, and then distributed and sold to patrons, either directly from the tank or by means of the delivery wagons. In some instances, involving substantial quantities but only a small proportion of the whole—less than 5 per cent.—plaintiff sells tank-cars of gasoline and kerosene direct to its customers in Georgia, making interstate shipment direct to customer's address.

The majority of the judges held that the provisions for inspection of petroleum products were a permissible exercise of the State's police power; that in so far as the fees yielded revenue in excess of the cost of inspection they were attributable to the taxing power of the State and not objectionable except as applied to interstate commerce, as to which they were invalid; that they were not in conflict with the uniformity clause of the state constitution; that so far as plaintiff's products were indefinitely stored within the State, or sold there after breaking bulk or original packages, they were subject not only to inspection but to the tax imposed, as soon as the interstate transportation was ended; and that the State should be permitted to enforce the inspection fees so soon as the products passed out of interstate commerce, although restrained with respect to products while in such commerce; citing *Ratterman* v. *Western Union Telegraph Co.*, 127 U. S. 411.

After the interlocutory decree and pending the appeal, evidently in view of the controversy raised in this case, the general assembly passed an Act, approved August 17, 1920 (Ga. Laws 1920, No. 800, p. 163), declaring that the laws relating to inspection and tests, and prescribing the fees therefor and the duties of the Commissioner of Agriculture,

and general oil inspector and local inspectors, as set forth in §§ 1800 to 1814, both inclusive, of the Civil Code, and in Act of August 19, 1912, and the penalties provided in §§ 639 and 642 of the Penal Code, " shall never be held or construed to apply to oils and gasoline, benzine, or naphtha, or other articles mentioned in said laws, imported into this State in interstate commerce and intended to be sold in the original and unbroken tank cars or other original receptacles or packages, and so sold, while the same are in interstate commerce."

In view of the provisions of this act we need spend no time in discussing whether the judges were right in following the rule of practical separability in administration, applied by this court to a taxing law single on its face in *Ratterman* v. *Western Union Telegraph Co.*, 127 U. S. 411, a case followed, since the decision below, in *Bowman* v. *Continental Oil Co.*, 256 U. S. 642. Any question whether the same or a different rule ought to be applied to an inspection law employed for the purpose of revenue taxation, based upon doubt as to the intent of the state legislature to permit the system to remain in force with respect to products stored within the State or sold in domestic commerce, when determined to be unenforceable as to the like goods while in interstate commerce, is set at rest by the new act, which under the circumstances must be accepted as manifesting an intent that the system shall remain in effect as to products that are subject to the taxing power of the State, as clearly as it declares a contrary purpose as to products still remaining in interstate commerce. Although passed after the decree below, this act must be given effect in deciding the appeal, since the case involves only relief by injunction, and this operates wholly *in futuro. Duplex Printing Press Co.* v. *Deering*, 254 U. S. 443, 464.

That a State is within its governmental powers in requiring inspection, including tests as to quality, as a

safeguard with respect to inflammable substances such as those here involved, when found within its borders, or even when moving in commerce from State to State (there being no legislation by Congress upon the subject), is well settled. *Pure Oil Co.* v. *Minnesota,* 248 U. S. 158, 162. That with respect to such substances when they have passed out of interstate commerce and have come to rest within the State and become a part of the general mass of property or have become the subject of domestic commerce, the State may impose inspection fees substantially in excess of the cost of inspection, and thus make them a source of general revenue, is also free from doubt, other than any which may arise from its own constitution. But a State may not, without consent of Congress, impose this or any other kind of taxation directly upon interstate commerce; and inspection fees made to apply to such commerce, exceeding so clearly and obviously the cost of inspection as to amount in effect to a revenue tariff, are to the extent of the excess a burden upon the commerce amounting to a regulation of it, and hence invalid because inconsistent with the exclusive authority of Congress over that subject. *Standard Oil Co.* v. *Graves,* 249 U. S. 389, 394–395.

Plaintiff makes the broad contention that inspection charges amounting in effect to taxation cannot be imposed even upon that part of its product which has come to rest within the State, or is disposed of in domestic trade, in view of the fact that all of it has come from other States. But *American Steel & Wire Co.* v. *Speed,* 192 U. S. 500, 520, settles the principle that goods brought into a State, not from a foreign country but from another State, having reached their destination and being held in storage awaiting sale and distribution, enjoying the protection which the laws of the State afford, may without violation of the commerce clause be subjected to nondiscriminatory state taxation, even though still contained

in original packages. This decision is in line with the previous cases of *Woodruff* v. *Parham,* 8 Wall. 123, 140, and *Brown* v. *Houston,* 114 U. S. 622, 632–634; and it was pointed out that their authority was not overruled by *Leisy* v. *Hardin,* 135 U. S. 100, or other cases of like character.

Appellant insists that *Standard Oil Co.* v. *Graves,* 249 U. S. 389, is inconsistent with the imposition of inspection fees on a revenue basis upon goods brought from another State, however held or disposed of in Georgia. That decision, however, extended the exemption from such fees of goods brought from State to State, no further than " while the same are in the original receptacles or containers in which they are brought into the State " (pp. 394–395); and so it was interpreted in *Askren* v. *Continental Oil Co.,* 252 U. S. 444, 449.

*Brown* v. *Houston,* and *American Steel & Wire Co.* v. *Speed, supra,* sustain the power of a State to impose property taxes upon goods brought from another State, after they have come to rest in the taxing State. But this carries equally the power to tax, without discrimination, domestic sales made of personal property similarly freed from interstate commerce, as is illustrated in *Woodruff* v. *Parham,* 8 Wall. 123, 140; *Wagner* v. *City of Covington,* 251 U. S. 95, 102–103, and cases there cited. The fact that no goods of the like kind are produced within the taxing State, and that necessarily all have come from other States, is not of itself sufficient to show a discrimination against interstate commerce. The precise point was dealt with in *Askren* v. *Continental Oil Co., supra,* in that part of the opinion which treated of the excise tax imposed by New Mexico upon retail sales of gasoline, respecting which the court said (pp. 449–450): "A business of this sort, although the gasoline was brought into the State in interstate commerce, is properly taxable by the laws of the State. Much is made of the fact that New Mexico

does not produce gasoline, and all of it that is dealt in within that State must be brought in from other States. But, so long as there is no discrimination against the products of another State, and none is shown from the mere fact that the gasoline is produced in another State, the gasoline thus stored and dealt in, is not beyond the taxing power of the State." The ruling was reiterated in the same case at its final stage, *Bowman* v. *Continental Oil Co.*, 256 U. S. 642.

Something should be said as to the inspection of plaintiff's products, involving liability for fees, while the products yet remain in the tank-cars. A like question raised in *Pure Oil Co.* v. *Minnesota*, 248 U. S. 158, concerning the oil inspection law of that State, was unnecessary then to be decided (p. 164); the court having found the inspection fees there imposed were not shown to be so largely in excess of the cost of inspection as to amount to a tax inadmissible as applied to subjects still in interstate commerce, and hence that they might be imposed while the products remained in such commerce. In this case, the fees concededly being a source of revenue, the question of so adjusting their application as to avoid taxing interstate commerce becomes important.

The practice, uniformly followed with plaintiff's consent, indeed at its request and for its convenience, has been to inspect the oil and gasoline arriving at its distributing stations while remaining in the tank-cars, with resulting immediate liability for the fees; otherwise as to direct deliveries to its customers buying in tank-car lots. In the normal course of the business, as shown by this record, the tank-cars are not only the vehicles but the original containers for interstate transportation, as well with respect to products consigned to plaintiff's own stations as to deliveries made direct to other interstate consignees. Ordinarily, unless a loaded car be used for indefinite storage, or as a distributing tank for local sales

(nothing of either kind appears in the case) it remains in interstate commerce until unloaded, and the agents of the State may not lawfully subject its contents to the inspection charges until transferred to the storage tank, unless with plaintiff's consent. Neither under a fair construction of the Act of 1920, nor (if that permitted) under the Constitution of the United States, may such inspection combined with taxation be imposed as a condition of admitting into the domestic market goods arriving at destination in interstate commerce. The mere fact that a loaded tank-car has been halted upon a siding, or even upon a private track, for the purpose of unloading, at a station either of plaintiff or of any other interstate consignee, does not, under the course of business here shown, amount to a " coming to rest within the State," authorizing state taxation. And although the State may tax the first domestic sale of the products, or tax them upon their storage in stationary tank awaiting sale, it may not, without consent of the owner, impose its power upon the products while yet in the tank-car, but must resort to other means of collection, if need be.

The evidence strongly tends to show that it may be more convenient to plaintiff that inspection before unloading of tank-cars, as heretofore practiced, be continued; and there is no legal objection to this, if done with plaintiff's free consent. Aside from this, the authority of defendants to tax the products or their storage or sale commences when they have come to rest; ordinarily when transferred from the tank-car to the storage tank and added to plaintiff's stock-in-trade kept therein for local distribution and sale.

We interpret the decree below as permitting no interference by defendants with the right of plaintiff freely to carry on its interstate commerce under the Constitution of the United States, as that right is here stated.

That matter being out of the way, plaintiff's objections to the inspection and taxing system as arbitrary and unreasonable, and not a fair exercise of the taxing power, though magnified by confused manner of statement, are easily disposed of. Considering not merely the terms but the practical operation and effect of the statutory provisions, which is the proper method (*St. Louis Southwestern Ry. Co.* v. *Arkansas*, 235 U. S. 350, 362), we have here a combined inspection and revenue law applicable to petroleum products, not materially differing in main features (aside from the revenue derived from the fees), from those adopted by other States, and doubtless chosen for facility and economy in operation and equitable apportionment of the burdens according to the benefits. It has a two-fold object, first, that these inflammable substances be not stored or distributed among the people of Georgia without such assurance of quality and fitness as the prescribed inspection and tests may afford, secondly, that charges sufficient to defray the cost, with something additional for the general treasury, be imposed in a way to operate as an indirect tax upon the ultimate consumers of the products, approximately in proportion to the amounts consumed. That it combines regulation with revenue-raising is not a valid objection from the standpoint of the Fourteenth Amendment. *Gundling* v. *Chicago*, 177 U. S. 183, 189. The tax, to describe it according to its essential nature, is an excise upon domestic sale or storage, designed to affect the use of the products, a tax imposed at the time of inspection, the inspector acting also as tax-gatherer; inspection and tax-payment required but once, and that, ordinarily, from the dealer at the time of the first domestic sale, or during storage preliminary to such sale. The self-interest of the dealer and the customs of trade are relied upon to add the tax to the price of the product, and thus pass it on to the

ultimate consumer—a method appropriate in indirect taxation, and certainly a not unreasonable mode of distributing the burden among those who share in the benefits.

That the legislature intended the effect of the tax to fall upon the ultimate consumer is evident, not only from the obviously inevitable result of requiring its payment, ordinarily, by the first domestic seller, but from the specific provisions of the amendatory Act of 1913, that the 1912 Act " shall apply not only to gasolines, benzines and naphthas sold or offered for sale in the State of Georgia, but likewise to all such commodities that may be sold elsewhere and brought into the State of Georgia, for consumption or use. Where such commodities or any of them may be purchased within the State, or without the State and brought into the State, by any person, firm or corporation, not for the purpose of selling or offering the same for sale, but for the purpose of use or consumption by the purchaser in manufacturing or other lawful uses, either as fuel or otherwise, the inspections herein prescribed shall be made, and the fees above fixed shall be paid therefor, except that no such purchaser shall be required to pay more than twelve hundred dollars per year for the inspection of all such commodities used or consumed by him as aforesaid, and such payments may, in the discretion of the Commissioner of Agriculture, be divided into equal monthly payments of one hundred dollars each."

No case is shown for the application of this act; the judges below found no occasion to pass upon it, plaintiff's products not being brought in for its own consumption. In this court there has been no discussion as to its proper construction; plaintiff's counsel insisting merely that it shows the inspection fees are not imposed as a privilege tax for the conduct of any particular kind of business.

Apparently, it was intended to cover the case of large consumers who otherwise might find it advantageous to bring in, and store until needed, quantities of oil or gasoline sufficient . for their own consumption, thus escaping dealer's profit and inspection tax as well. We find in its provisions nothing to raise a question about the validity of the system.

We are unable to see in Article 7, § 2, paragraph 1, of the state constitution anything to prevent the application of these statutes to plaintiff's business. The requirement of uniform valuation upon all property subject to be taxed, manifestly refers to property taxes imposed by reason of ownership, which this is not. The clauses requiring that all taxation shall be uniform upon the same class of subjects, and levied and collected under general laws, are not violated by the tax in question. Classification is in terms permitted, and a law based on reasonable classification must be deemed a general law, in the sense of the constitution.

The decisions of the Supreme Court of Georgia hold that, while property taxes must be strictly on an *ad valorem* basis—without variance even as between real and personal property (*Verdery* v. *Village of Summerville,* 82 Ga. 138; *Mayor* v. *Weed,* 84 Ga. 683, 687;)—other subjects of taxation may be resorted to, and the taxes adjusted according to reasonable methods of classification. *Atlanta National Association* v. *Stewart,* 109 Ga. 80, 87. Thus, inheritance taxes, being not a tax upon property but an excise upon the privilege of transfer upon death of an owner, were held valid although not *ad valorem,* in *Farkas* v. *Smith,* 147 Ga. 503, 512.

The peculiar qualities of illuminating oils and gasoline seem to us a sufficient warrant for putting them in a class by themselves for excise taxation upon their sale or use. So we held, in *Bowman* v. *Continental Oil Co., supra,* with respect to an excise upon the sale or use of gasoline, under

a provision of the constitution of New Mexico not differing materially.

While some of the Georgia decisions indicate a rather strict view of the uniformity required (*Johnston* v. *Mayor, etc., of Macon*, 62 Ga. 645; *Beckett* v. *Mayor, etc., of Savannah*, 118 Ga. 58;) we have found none going so far as it would be necessary to go in order to overthrow the inspection tax now in question. That it is imposed, as a rule, only upon the dealer who makes the first domestic sale, not upon those who may make subsequent sales, is consistent with the nature of the tax and the purpose to distribute its burden among those who ultimately consume the product. To impose a like tax each time the commodity changed hands in retail trade might place so heavy a burden upon those purchasing other than at first hand as to render it impossible for the retailer to compete and thus seriously obstruct general distribution. The graduation of the inspection charges according to the quantity that may be inspected at one time—½ cent per gallon in lots of 400 gallons and upwards, 1 cent in quantities between 200 and 400 gallons, 1½ cents in quantities less than 200 gallons—speaks for itself, and plainly is sustainable on the ground that the travel, care, and responsibility of the inspector may be greater than uniform fees per gallon would compensate in the case of the smaller lots. The only other diversity we have noticed in the operation of the tax is that which may arise out of the Act of 1913 entitling a purchaser who buys not for resale but for his own use or consumption, to a limitation of inspection fees to $1,200 per annum. No point is made of this, but a rather obvious ground of classification suggests itself, in that the purchaser for his own use or consumption has no opportunity to make a profit out of resale, as plaintiff and other dealers who pay the full inspection fees may do.

Finally,. our attention is called to an Act approved
August 10, 1921 (Laws 1921, No. 173, p. 83), providing for
an· occupation tax upon· all distributors selling gasoline
and other motor fuels in the State,· requiring them to reg-
ister and make;returns, and "(except those importing and.
selling it in the original packages in which it is brought
into the State)" to pay an occupation tax based upon the
quantities sold.  It is·conceded that this does not repeal or
affect the inspection laws, and no argument is rested upon
it except in support of contentions already disposed· of.
    The decree of the District Court must be, and it is

*Affirmed.*