## STANDARD OIL CO. OF KANSAS et al. v. ANGLE, Collector of Customs, et al.

### No. 10235.

Circuit Court of Appeals, Fifth Circuit.

June 9, 1942.

Rehearing Denied July 15, 1942.

Robert H. Anderson, of Miami, Fla., for appellants.

Walker Lowry, Atty., Office of Price Administrator, Washington, D. C., H. S. Phillips, U. S. Atty., of Tampa, Fla., W. A. Paisley, Asst. U. S. Atty., of Jacksonville, Fla., and George A. Smathers, Asst. U. S. Atty., of Miami, Fla., for appellees.

Before FOSTER, HUTCHESON, and McCORD, Circuit Judges.

PER CURIAM.

Beginning as two suits, one by appellant, Standard Oil Company of Kansas, to compel, the other by appellee to restrain by injunction, the delivery of tires imported from Cuba, the two suits were, before judgment, consolidated into one. In appellant's suit, the claim was that it, as importer, had complied with all customs regulations and requirements, and it became and was the mandatory duty of the collector to deliver the tires to it. In appellee's suit and in his defense to that of appellant, the claim was that the Office of Price Administration acting under the authority of the Tire Rationing Regulations,[1] commonly called "freezing", issued December 30, 1941, had directed and enjoined him not to deliver the tires except in accordance with authorization from that Office, and that he was holding them pursuant to those directions. In the prosecution of its own and in defense of appellee's suit, appellant asserted that the regulations did not extend to, and were not effective to prevent, its acquiring and taking delivery of the tires. Testimony was taken as to the circum-

[1] Those regulations, provided in part: "* * * No person shall sell, lease, trade, lend, deliver, ship or transfer new tires or tubes and no person shall accept any such sale, lease, trade, loan, delivery, shipment or transfer of any such new rubber tires and tubes. The word transfer includes any form of physical transfer, including gifts." * * * "* * * The prohibition * * * applies both to sale and to deliveries. * * * It is unlawful to deliver new tires or tubes to a person, even though such person has completed and paid for the purchase or agreement for transfer of new tires or tubes from the person of whom delivery is requested." * * * "The prohibition * * * applies not only to the transfer of tires or tubes from one person to another, but also to the delivery by any person from a factory, warehouse or other premises to a retail store outlet or premises whether or not owned, operated or controlled by such person."

stances of the purchase and importation of the tires and as to their being held by the customs under orders from the Office of Price Administration. This testimony was to the effect that appellant, Standard Oil Company, was an oil operator; that the producing of crude oil and its refining carries a very high priority rating; that in the production of crude oil it was necessary for the plaintiff company to use motor vehicles; that after the "freezing order" was made, plaintiff, through its president, undertook to secure rubber tires that it thought were not within the purview of the "freezing order"; that he went to Cuba to buy tubes for use on its cars and trucks in petroleum production; that he ascertained that they were importable and he then purchased and imported the tires in question which, American made, had been shipped out of the United States and were now being shipped back; and that when he went to get the tires out of customs, the customs agent advised[2] him that he would have to get a letter from the Office of Price Administration before he could release them. There was testimony that an effort had been made to get a release from the Office of Price Administration but without avail, but there was no testimony that plaintiff had made any application to a rationing board for certificates or had in any other way proceeded before the Office

of Price Administration to make out a case which under the regulations would authorize delivery. Thus the sole question posed by the evidence was whether the regulations invoked by the Price Administration and applied in its order to the customs agent, prohibited appellee from delivering and appellant from receiving, the tires in question, except in accordance with orders from the Administration.

The district judge on findings of fact fully supported by the evidence, concluded that the delivery the plaintiff sought, was prohibited by the tire rationing regulations and that there should be a decree[3] dismissing appellant's suit and restraining his efforts to obtain delivery.

Plaintiff has appealed. Here appellee insisting that the regulations as they existed when the suit was tried, fully support the court's conclusion and order yet urge upon us that if mistaken in this, the judgment should be affirmed on the authority of the revised regulations for that Subsection A (1)[4] of Section 801 of the Regulations as revised, in terms provides: "Similarly, tires, or tubes imported into this country and held in customs at a point of entry may not be released to the claimant unless he is authorized by these regulations to accept them."

Not at all bringing into question the validity or authority of the regulations but

[2] This was the order on which appellee acted: "The Collector in charge of Customs, Miami, Florida, Retal, January 15, 1942, entry automobile tires and tubes by Standard Oil may be accepted but merchandise should not be released unless importer obtains special authorization from Office of Price Administration."

[3] "1. The complaint of Standard Oil Company of Kansas be, and the same is, hereby dismissed.

"2. D. C. Coleman, as Sheriff of Dade County, Florida, and his lawful agents, be and they are hereby permanently enjoined from replevying or taking into custody the rubber tires and tubes involved in these actions, and from making any attempt to take the said rubber tires and tubes into custody."

[4] The whole of this section reads as follows: "(1) The word 'transfer' is very broadly defined. It includes not only transfers by a sale, lease, or trade of a new tire or tube, but also by gift from one person to another and includes the transfer of any legal or equitable right or interest in any tire or tube. Again, it applies to any transfer from one per-

son to another even though no change in 'title' is involved. For example, unless expressly authorized by these regulations, transfers may not be made of new tires or tubes to a person by a dealer even though the person had previously bought and paid for the tires or tubes. Similarly, tires or tubes imported into this country and held in customs at a point of entry may not be released to the claimant unless he is authorized by these regulations to accept them.

"(2) Unless specifically exempted, all physical transfers involving a change in the location or use of tires or tubes are included. Thus, if a dealer in tires or tubes removes a tire from his stock and mounts it on a vehicle owned by him, a transfer has occurred within the meaning of these regulations. Furthermore, a change in physical location involving a movement of a tire from one establishment to another is a transfer, although routine shifts in stock within a single building are not transfers within these regulations. It should be noted, however, that freedom to move tires and tubes is expressly permitted by paragraph (c) of this section in a wide number of cases."

pitching its case entirely upon their construction, appellant insists that the words "delivery" and transfer" as used therein, have a connotation entirely different from that given to them by the district judge. They have to do, insists appellant, not with a mere naked delivery or transfer of pos· session out of official custody, as here, but with one which is an incident of a purchase or other acquisition of title, and here no question of title or right to possession exists. There is here, all customs regula· tions having been complied with, merely a question of the surrender of a custody which has completely served its purpose.

We do not think that this will at all do. The purpose of the "freezing" regulations was comprehensively and completely to fix the status of the tires they dealt with and prevent a change of that status except in accordance with the regulations. No claim is made here by the appellee which in any wise impairs appellant's title to or looks at all to taking his property in the tires. All that appellee, an agent of the government, has done or proposes to do is, in compliance with the regulation and the orders of the Office of Price Administration, to withhold delivery of the tires until they are released in accordance therewith. Appellant's apprehensions that its property is about to be or will be confiscated by the action of the collector as confirmed by the judge, have no sounder foundation to rest upon than would the apprehensions of any other person whose tires are frozen, that its property is to be, or is thereby, taken without compensation. Coming to the issue on which the appeal for decision rests, whether the word "delivery" as used in the regulation covers the action the collector is refusing to, and appellant is seeking to have him, take, we think it too clear for argument, that it does. Appellant began this proceeding by an action of replevin in the state court the sole purpose of which was to require delivery, and the burden of its petition in this court is that delivery to him has been denied. Indeed its prayer concludes that appellee be prevented from interfering with the "delivery" of the tires to the plaintiff.

But if we could agree with appellant that the district judge incorrectly interpreted the order as it existed when the judgment was entered this would not avail it, for by amendment of the regulation, the precise situation here under review was expressly brought within it. In United States v. The Schooner Peggy, 1 Cranch 103, at page 110, 2 L.Ed. 49, the Supreme Court in 1801 first gave expression to the governing rule. "It is in the general true that the province of an appellate court is only to enquire whether a judgment when rendered was erroneous or not. But if subsequent to the judgment and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed, or its obligation denied. If the law be constitutional, and of that no doubt in the present case has been expressed, I know of no court which can contest its obligation." It has never departed from it. Vandenbark v. Owens-Illinois Co., 311 U. S. 538, 61 S.Ct. 347, 85 L.Ed. 327; Hines v. Davidowitz, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581; Texas Company v. Brown, 258 U.S. 466, 42 S.Ct. 375, 66 L.Ed. 721. If then the terms of the original regulations left the question of their coverage in doubt, and we do not think they did, the amended regulations in terms precisely cover this case, and, under the principle above set out, control its disposition.

Insofar then as the judgment restrained the sheriff from replevying the tires, it was right. It was right too insofar as it dismissed the complaint for an injunction restraining the collector from withholding delivery of the tires and prevented appellant's getting possession of them except pursuant to the orders of the Office of Price Administration under the Tire Rationing Regulations. Limited as the decree was by its reference to the pleadings and the facts, we think it went no further than this. But to put it beyond doubt that this was its extent, it will be provided that the affirmance of the decree is without prejudice of course to appellant's title to and rights in the tires subject to the Regulations, or to its right to apply for and receive the tires in accordance with the Regulations, and the rulings of the Office of Price Administration thereunder.

Affirmed.