**WOODS, Housing Expediter, v. BARNES et al.**

Civ. 3270.

United States District Court
N. D. New York.

May 19, 1949.

Sylvan D. Freeman, Chief, Litigation Section, Office of Housing Expediter, New York City, and William Hauser, Litigation Atty., New York City, for plaintiff.

Higbee & Fuess, Syracuse, New York (Mr. Sidney B. Coulter, Syracuse, New York, of counsel), for defendants.

FOLEY, District Judge.

This action is instituted by the Housing Expediter under the authority delegated by section 206(b) of the Housing and Rent Act of 1947, as amended, Public Law 129, Act of Congress, 50 U.S.C.A.Appendix, § 1896(b). The relief outlined by the terms of this subsection of 206 is injunctive and equitable in its terms. However, it is similar to section 205(a) of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix, § 925 (a), and in accordance with the legal construction of that section, particularly as interpreted in Porter v. Warner Holding Co., 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332, the Housing Expediter prays not only for an injunction but also for an order of restitution of the alleged overcharge to the tenant involved in the controversy. The amount sought to be refunded totals one hundred forty ($140) dollars, based upon the claimed overcharge of four ($4) dollars per month, covering a period of thirty-five (35) months from October 1, 1945, to October 1948.

The defendants together with a general denial of the material allegations of the complaint interpose in their answer four separate and distinct answering defenses. It may be well to dispose of three of the defenses in the beginning because they cannot be sustained in the law. The fourth defense, which is based upon fraud is in the nature of a set-off, recoupment, and counterclaim against any restitution to the tenant involved in this controversy. This defense and set-off is substantial and shall await the outline of the facts herein.

In their first affirmative contention of defense, the statements are that under the undisputed facts the tenant, Rose Nel-

son, was an owner of the property involved, and that as such owner she occupied the premises between the years 1942 and October 1945; that by such fact of owner-occupancy the premises were decontrolled and there was no maximum rent from October 1, 1945, to October 1, 1948, the period of overcharge alleged in the complaint. These are the true facts, but unfortunately do not bring the situation within section 202(c) (3) (B) of the Housing and Rent Act of 1947, 50 U.S.C.A.Appendix, § 1892 (c) (3) (B), because the provisions clearly state that decontrol occurs where there is continuous ownership-occupancy from February 1, 1945, for any successive 24-month period to the date of enactment of the Housing and Rent Act of 1948. The testimony upon the trial, undisputed by the defendant, shows that the ownership of Rose Nelson changed to that of tenant in October 1945, and from these facts the defense must fall as a matter of law.

The second and third distinctive affirmative defenses are also untenable as a matter of law. The action is brought by the Housing Expediter in his governmental capacity, pursuant to the stated authority in 206(b) of the Housing and Rent Act of 1947. The Housing Expediter is the proper party under that provision of the law and the fact that restitution of the overcharge to the tenant may be ordered as an incident to such equitable remedy does not affect his status as a proper party plaintiff. There is considerable judicial authority to that effect in similar situations. Porter v. Warner Holding Co., supra; Gates v. Woods, 4 Cir., 169 F.2d 440; Creedon v. Bowman, D.C., 75 F.Supp. 265. The assertion in the third defense as to a statutory limitation banning this action is answered by the majority holding in Porter v. Warner, supra. The dissenting opinion by Mr. Justice Rutledge discussed the anomalous holding of the court in reference to the explicit limitation of time in reference to the action by the tenant. The dissent is reasonable and intelligent in that respect, but this court must follow the ruling of the majority. In Warner Holding Co. v. Creedon, 8 Cir., 166 F.2d 119, the construction in Porter v. Warner was followed in a

situation where the limitation of one year was interposed as a defense.

Let us outline and discuss the facts, undisputed and disputed, as produced upon the trial of this action. In the year 1942, Rose Nelson was the owner with her husband of premises located at 119 Oxford Street, Syracuse, N. Y. Her husband, Nelson, is now deceased, and she is married to a Mr. Casella. The premises consisted of a lower and upper flat. In March 1943, Mrs. Nelson moved in to the upper flat which she still occupies. In the month of September 1945, after negotiations with Melvin Martin, a licensed real estate broker acting for the Nelsons, the defendants and the Nelsons entered into a contract for the sale and purchase of the property. The sale was consummated early in October 1945, and the Nelsons commenced paying rent as tenants on October 1, 1945. The upper flat in question was personally registered by Mrs. Nelson on March 1, 1942, at a maximum rent of thirty-one ($31) dollars per month. It was stipulated by the defendants on the trial that thirty-five ($35) dollars per month was paid after the Nelsons became tenants until October 1, 1948. There were some exhibits introduced by the plaintiff as to payments in excess of thirty-five ($35) dollars for several months. However, this evidence is not pressed by the government, or is the issue of garage space and additional garage space important to this decision. The defendants no longer are the record owners of the property.

The important and serious dispute concerns the conversations between the Nelsons and the defendants concerning the tenancy, decontrol, and maximum rent. The original surviving tenant, the former Mrs. Nelson, testified that she personally registered the property in 1942 with maximum rent on thirty-one ($31) dollars for the upper flat; that in August or September 1945, previous to the signing of the contract of sale with the defendants, she informed them that the registered rent for such flat was thirty-one ($31) dollars per month; that after the completion of the sale and the beginning of the tenancy by the Nelsons there was a conversation concerning the rent by all the parties, and

158

inasmuch as the Nelsons did not desire to move at that time, and that the defendants said the rent was not sufficient, the Nelson's agreed to pay an additional four ($4) dollars or thirty-five ($35) dollars per month.

In direct contradiction, the testimony of the defendants is to the effect that previous to the signing of the contract of sale they had a conversation with Mrs. Nelson, and although she told them the lower flat was controlled at fifty ($50) dollars per month, the upper flat was uncontrolled. They swear that they impressed Mrs. Nelson with the fact that they were purchasing the property as an investment and were concerned about the maximum rentals. It is their testimony that Mrs. Nelson emphasized the flat was uncontrolled and that because of the health of Mr. Nelson they would probably only remain two months in the upper flat because they intended to move to Arizona. Both defendants assert that they do not recall the real estate broker speaking about rental value.

In rebuttal, the plaintiff called Melvin Martin, the real estate broker, who stated that he told the defendant husband that the rental value for the upper flat was thirty-one ($31) dollars, furnished and garage, and fifty ($50) dollars for the lower flat.

It is upon this sharp conflict of fact that the defendants base their set-off, defense, and counterclaim against any restitution to the surviving tenant, Mrs. Nelson. They claim that Mrs. Nelson committed an actionable fraud in misrepresenting the rental value of the upper flat to their damage. That said representation was knowingly false and made solely to induce the defendants to purchase the property.

■ It is difficult to arrive at this conclusion of fraud upon the evidence presented. There is an even balance of evidence, and not the necessary preponderance, in favor of the defendants. Proof as to fraud must be clear and convincing in every respect. Under the conflict of fact herein, it is difficult to so find.

■ Fraud is not to be presumed, and something more is required than mere weight or preponderance of evidence, and evidence must be clear, unequivocal, and convincing. Lackawanna Pants Mfg. Co. v. Wiseman, 6 Cir., 133 F.2d 482, 486.

However, there are circumstances and facts proved upon the trial which equitably favor the defendants. They are people of standing and reputation in their community. They did not participate in any clandestine plan or scheme to conceal the payment of thirty-five ($35) dollars. Receipts were openly given for these amounts over a long period of years. It is their testimony that they knew nothing of the rent ceiling until 1948 when they went to the area rent office. They emphasize that no copy of the registration was given by the Nelsons to them, and this testimony is uncontradicted in the record. There was not the usual landlord and tenant relationship. Mr. Nelson is now deceased.

It is my judgment that in reference to the overcharge it was not wilful, but negligent and careless. It was their duty as purchasers with previous experience to check the official registration of the property. In the matter of decontrol, they were ignorant of the law.

■ Whatever is sufficient to put a party on inquiry amounts to "notice," provided the inquiry becomes a duty and would lead to knowledge of the requisite facts by the exercise of ordinary diligence. First Nat. Bank of Biddeford v. Pittsburg, F. W. & C. Ry. Co., D. C., 31 F.Supp. 381, 386.

■ Therefore, upon all the evidence and testimony, and in the exercise of the equitable conscience of this court, the order of refund to the tenant Rose Casella, or Nelson, shall be limited to a period of 12 months, or a total of forty-eight ($48) dollars, at four ($4) dollars per month. I arrive at this amount as an equitable adjustment of the situation. This amount is sufficient deterrent against future violations.

■ Power is thereby resident in the district court exercising this jurisdiction to do equity and to mould each decree to the necessities of the particular case. Hecht Co. v. Bowles, 321 U.S. 321, 329, 64 S.Ct. 587, 88 L.Ed. 754, cited in Porter v. Warner Co., supra; also similar prin-

ciple enumerated in Warner Holding Co. v. Creedon, supra.

No injunction shall issue because it is totally unnecessary in law and fact. The defendants have disposed of the property in question and there is no showing by the plaintiff that they are continuing and vicious violators of the Rent Act against whom it is necessary to exert the full force of the law.

The trial attorney for the government previous to and in the trial of this action was unbending, unyielding, and uncompromising. He is the self-proclaimed champion in the war against inflation, but when he captures his prisoner he should be more tolerant. Even the belligerent and dauntless warrior Winston Churchill pledged magnanimity to his foe in the event of victory. Many of these problems can and should be adjusted, and each particular action should stand upon its particular facts. It may be necessary and expedient to mimeograph the complaints, but we should not mimeograph the defendants and the circumstances surrounding their violations.

This great democracy is founded upon tolerance and compromise. We are a nation "with malice toward none; with charity for all;" we strive to bind up the nation's wounds." We remember and follow the philosophy of Edmund Burke, speaking for conciliation with America, that "all government—indeed, every human benefit and enjoyment, every virtue and every prudent act—is founded on compromise and barter."

There is much authority on injunction. Relief by injunction is discretionary and may be denied when the court does not deem there is a danger of repetition of unlawful conduct. Walling v. Florida Hardware Co., 5 Cir., 142 F.2d 444. Government by injunction does little "to insure domestic tranquility."

In any event, an injunction looks to the future. Douglas v. City of Jeannette, Pa., 319 U.S. 157, 63 S.Ct. 877, 882, 87 L. Ed. 1324, 146 A.L.R. 81; Texas Co. v. Brown, 258 U.S. 466, 474, 42 S.Ct. 375, 66 L.Ed. 721; Standard Oil Co. (Indiana)

v. United States, 283 U.S. 163, 182, 51 S.Ct. 421, 75 L.Ed. 926.

The purpose of an injunction is not to punish a guilty party for past violations, but to prevent his future non-compliance with law. Bowles v. Minish, D.C., 56 F.Supp 153.

This opinion is sufficient in detail, and contains my findings of fact and conclusions of law. An order of restitution to the tenant in the amount of forty-eight ($48) dollars may enter, and otherwise the prayer for judgment by the plaintiff is denied.