NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

WAGNER ELECTRIC CORPORATION,
Respondent.

No. 78–1009.

United States Court of Appeals,
Fifth Circuit.

Dec. 26, 1978.

Elliott Moore, Deputy Associate, Gen. Counsel, Janet McCaa, Supervisor, Wyneva Johnson, Atty., John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Associate, John S. Irving, Gen. Counsel, N.L.R.B., Washington, D. C., for petitioner.

Kullman, Lang, Inman & Bee, Ernest R. Malone, Jr., New Orleans, La., for respondent.

Before COLEMAN, CLARK and RUBIN, Circuit Judges.

COLEMAN, Circuit Judge:

This case is before the Court on an application by the National Labor Relations Board for enforcement of its order against Wagner Electric Corporation pursuant to § 10(e) of the National Labor Relations Act, 29 U.S.C. § 151, *et seq.*, as amended. The Board found that Wagner Electric (the Company) violated §§ 8(a)(5) and (1) of the Act and ordered it to bargain with Local Union No. 903, International Brotherhood of Electrical Workers, AFL–CIO (the Union) as the representative of all of its production and maintenance workers.

On June 25, 1976, the Union filed a representation petition with the Board for an election among all production and maintenance employees at the Company's Lumberton, Mississippi, facility. The Company and the Union entered into a Board-approved Stipulation for a Consent Election, to be held August 27, 1976. In that election all 50 eligible voters cast ballots. The Union won by a vote of 27 to 23, with no challenged ballots.

On the afternoon of August 25, 1976, some 36 hours before the election, representatives of the Union passed out handbills erroneously stating the effective dates on which certain employees at a Westinghouse plant in another state (represented by the Union) were to receive certain cost-of-living increases over the period 1976–1978.[1] The Company did not receive a copy of the handbill until August 26 or 27. The handbill stated, in relevant part, as follows:

Effective July 12, 1976—.60¢ per hour for all employees plus an additional skill trades adjustment of .05¢ per hour to .50¢ per hour cost-of-living adjustment —November, 1976 up to .12¢ per hour.

Effective July 11, 1977—.25¢ per hour plus an additional cost-of-living up to .23¢ per hour based on the rise in inflation. Effective July 10, 1978—.25¢ per hour plus additional cost-of-living up to .23¢ per hour.

The handbill correctly stated that the Union's Westinghouse contract called for cost-of-living increases, and correctly stated the amounts of the increases, but incorrectly specified the effective dates of those increases. Thus, it was stated that an increase of up to $.12 per hour would be effective in November 1976, when, in fact, the increase would not be effective until December 13, 1976; that an increase of up to $.23 per hour would be effective July 11, 1977, when the increase would not be effective until December 12, 1977; and that an increase of up to $.23 per hour would be effective July 10, 1978, when the increase would not actually take place until December 11, 1978.

What it all boils down to is that there had been no misrepresentation or misinformation as to the pay increases having been granted, or about the amounts of the increases. The discrepancy was that the increases would not become effective as soon as had been stated.

Wagner Electric timely filed six objections to the election, alleging various types of Union coercion, intimidation, and misrepresentation which it claimed had undermined the validity of the election. The Union denied that it had interfered with the election, and, pursuant to Board regulations, the Regional Director conducted an administrative investigation of the Company's objections, allowing the parties to submit evidence bearing on the issues. Following the investigation, the Regional Director issued a Report on Objections, recommending that the six original objections be overruled, but noted that the evidence justified the seventh objection, which should be sustained—the inaccurate handbill had con-

1. The Company originally argued in its brief that the *amounts* of the cost-of-living increases were also incorrect and misleading. They now concede that this claim was an error on their part due to their reliance on a mistake in the Appendix to the Regional Director's Report on Objections which was later corrected.

tained material misrepresentations to which the employer was given no opportunity for an effective response. The Regional Director recommended that the August election be set aside and a second election held.

On November 23 the Union filed exceptions to the Regional Director's report, with a supporting memorandum regarding Objection No. 7. Thereafter, the Company filed an opposition to the Union's exceptions, but did not except to the Regional Director's overruling of the other six objections.[2]

On January 31, 1977, a three-member panel of the NLRB reversed the Regional Director's recommendation that the election be set aside, finding that the misstatements in the handbill were not so materially misleading as to warrant a new election. Additionally, the panel issued a "Certification of Representative" for the Union.

On April 18 the Union filed an unfair labor practice charge with the Board, §§ 8(a)(5) and (1), for the company's refusal to recognize and bargain with the Union and by refusing to provide the Union with the information it requested. The Company filed an answer admitting that the Union had won a majority vote in the election, but it had refused to bargain with the Union because it regarded the Union's certification as invalid.

On June 10 counsel for the General Counsel of the NLRB moved to transfer the case to the Board and for summary judgment on the grounds that the Company's answer alleged no newly discovered or previously unavailable evidence and, in view of the Board's certification of the Union and its denial of the Company's petition for rehearing, the answer constituted an admission that the Company had violated §§ 8(a)(5) and (1) of the Act. The Board transferred the proceedings on June 22 and ordered the Company to show cause why summary

judgment should not be granted. The Company filed a memorandum in opposition to the motion for summary judgment, claiming that the Union had lost its majority and relinquished its bargaining rights since the date of the election. They also requested a hearing.

In actions contemporaneous with these events the Union filed a charge against the Company, and thereafter, the Regional Director issued a complaint against the Company for unilateral changes in wages and hours made in June of 1977. The Company answered by denying the obligation to bargain with the Union because of invalid certification. On August 29 counsel for the General Counsel and the Company jointly moved to transfer this case to the Board and to consolidate it with the other case against the Company.

On September 30 the three-member NLRB panel granted the motion to consolidate these cases, granted the General Counsel's motion for summary judgment, and issued its decision and order after determining that a hearing was not necessary because the Company's allegation of additional illegal activities by the Union were not specific and there was no indication that the evidence was newly discovered or previously unavailable.

The Board found that the Company had violated §§ 8(a)(5) and (1) of the NLRA by refusing to recognize and bargain with the Union, by refusing to provide the Union with information it requested which was relevant and necessary to collective bargaining, and by making unilateral changes in wages, hours, and working conditions without notice to or bargaining with the Union. The Board ordered the Company to cease and desist from the unfair labor practices found and to stop interfering with, restraining, or coercing the employees in the exercise of their rights to organize and bargain collectively, § 7, 29 U.S.C. § 157.

---

**2.** Therefore, these objections and the matters they concern may not now be raised on appeal. § 10(e) of the NLRA, 29 U.S.C. § 160(e). "It is well settled that contentions urged [below] which are not preserved in exceptions or cross-exceptions are deemed waived, absent extraor-

dinary circumstances." *Barton Brands, LTD v. NLRB*, 7 Cir. 1976, 529 F.2d 793, 801. *See also, NLRB v. Rod-Ric Corporation*, 5 Cir. 1970, 428 F.2d 948, 950; *NLRB v. Claxton Poultry Co., Inc.*, 5 Cir. 1978, 581 F.2d 1133, 1135.

The Board's order also requires the Company to bargain with the Union upon request, to provide the Union with the relevant information which it requests, and to post appropriate notice.

In this Court, in response to the Board's application for enforcement of its order, the Company says that the certification of the Union was invalid; therefore, it should not be required to bargain with the Union.

The Board's decision in this case was rendered on January 31, 1977, 227 NLRB 1748.

On April 8, 1977, the Board rendered its decision in *Shopping Kart Food Market, Inc.*, 228 NLRB 1311. In that case the Board overruled *Hollywood Ceramics*, 140 NLRB 221 (1962). It held that "the Board will no longer probe into the truth or falsity of the parties' campaign statements," 228 NLRB at 1311, and that it will "no longer set elections aside on the basis of misleading campaign statements," 228 NLRB 1313.[3] The Board stated further, however, that intervention of the NLRB "will continue to occur in instances where a party has engaged in such deceptive campaign practices as improperly involving the Board and its processes or the use of forged documents which render the voters unable to recognize the propaganda for what it is," 228 NLRB at 1313; i. e., an election will be set aside "not on the basis of the *substance* of the presentation, but the deceptive *manner* in which it was made," 228 NLRB 1314.

*Shopping Kart* could, of course, be applied to this case because of the rule that an intervening change in the law while a case is on appeal will be applied by the appellate court.[4]

However, as in *NLRB v. J. C. Penney Co., Inc.*, 5 Cir. 1977, 559 F.2d 373, 377, we do not base our decision on the less restrictive standard established in *Shopping Kart*, because the misstatements of the effective dates of the cost-of-living increases were not sufficiently material or significant to trigger the *Hollywood Ceramics* standard.[5]

We are convinced that an employee might be influenced by an increase in wages obtained by the Union, even in some other plant and even if it was two states away, but we see no substantial basis for the idea that the effective date of the increase in a far away place would have any bearing on whether the voter would accept or reject union representation. The mistake as to the dates was "not such a substantial and material departure from the truth as to warrant setting aside the election," *Wagner Electric Corp.*, 227 NLRB 1748 (1977).

In this connection we are not unaware of our decision in *Luminator Division of Gulton Industries, Inc.*, 5 Cir. 1972, 469 F.2d 1371, an opinion authored by the present writer. In that case there was a material misstatement as to the *amount of the pay increases* on the front of the handbill while the correct amounts were more inconspicuously set forth on the inside. We held that this was a material misstatement and remanded the case for a hearing.

We see no merit at all in the Company's due process arguments.

The Order of the Board that the Company bargain with the certificated Union will be

ENFORCED.

3. The Board said that the *Hollywood Ceramics* rule impeded, rather than enhanced, employee free choice, that the rule encouraged protracted litigation, and that it no longer believed that employees needed the Board's "protection" from campaign misrepresentations.

4. *United States v. Schooner Peggy*, 5 U.S. (1 Cranch) 103, 110, 2 L.Ed. 49 (1801); *Texas Company v. Brown*, 258 U.S. 466, 473, 42 S.Ct. 375, 66 L.Ed. 721 (1922); *Standard Oil Co. of Kansas v. Angle*, 5 Cir. 1942, 128 F.2d 728, 730.

5. "Because the union election conduct did not breach the guidelines of *Hollywood Ceramics, Inc.*, 140 NLRB 221, 224 (1962), there is no need to consider the less restrictive standards established by *Shopping Kart Food Market, Inc.*, 228 NLRB [1311], 94 LRRM 1705 (1977)." *NLRB v. J. C. Penney Co., Inc.*, 5 Cir. 1977, 559 F.2d 373, 377.