NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

J. C. PENNEY COMPANY, INC., Respondent.

No. 76–3816.

United States Court of Appeals, Fifth Circuit.

Sept. 19, 1977.

Rehearing Denied Nov. 15, 1977.

Elliott Moore, Deputy Assoc., Gen. Counsel, Allison W. Brown, Jr., Supervisor, Corinna Metcalf, Atty., John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Assoc. Gen. Counsel, N. L. R. B., Washington, D. C., for petitioner.

Richard P. Shuey, Reg. Personnel Relations Rep., J. C. Penney Co., Inc., Atlanta, Ga., James V. Coggin, Jr., Steven Hymowitz, Memphis, Tenn., for respondent.

Raymond A. Jacobson, Dir., Region 26, N. L. R. B., Memphis, Tenn., for other interested parties.

Before THORNBERRY, AINSWORTH and RONEY, Circuit Judges.

RONEY, Circuit Judge:

In this labor relations bargaining order enforcement proceeding, J.C. Penney Company contests the unit certified by the Board on the ground that in a similar situation with Sears, Roebuck & Co., the Board included clerical workers with warehouse laborers and inventory personnel, but not here. If the 19 clericals had been included here, as they were in the *Sears* case, the 34

to 28 union victory may have turned the other way. We do not have to face the hard decision of whether, if the facts were the same, the Board could certify different units under its broad mandate to certify *an* appropriate unit, as opposed to *the* appropriate unit. Here we find sufficient differences between the work of the Penney employees and the Sears employees to prevent the facts from being the *same,* and to consistently permit the certification of different units. The other objections being without merit, we enforce the Board order, 22 N.L.R.B. 469, 92 L.R.R.M. 1288 (1976), which requires J.C. Penney Company to bargain with Local 667, Highway and Local Motor Freight Employees, affiliated with the International Brotherhood of Teamsters.

Upon the company's refusal to bargain in order to gain judicial review, the Board found the refusal violated 29 U.S.C.A. §§ 158(a)(1), (5) (1973). Penney contends that (1) the bargaining unit was too small, (2) the union engaged in prejudicial election misconduct, and (3) the Board denied due process by failing to grant a hearing on its election contentions.

In 1975 J.C. Penney Company opened a nationwide distribution center in Southaven, Mississippi. The center employs some 200 persons. The union sought to organize 63 warehouse laborers. The company thought 19 clerical employees should also be included but the union disagreed. The NLRB sided with the union, and certified an election among the 63 which the union won, 34 to 28. One challenged vote was never counted.

### The Bargaining Unit

The NLRB has statutory authority to determine bargaining units. 29 U.S.C.A. § 159(b) (1973). Review is limited to determining whether the decision is arbitrary, capricious, an abuse of discretion, or lacking in substantial evidentiary support. *Packard Motor Car Co. v. NLRB,* 330 U.S. 485, 491–492, 67 S.Ct. 789, 91 L.Ed. 1040 (1947); *NLRB v. Alterman Transport Lines, Inc.,* 465 F.2d 950 (5th Cir. 1972).

[T]he selection of an appropriate bargaining unit lies largely within the discretion of the Board, whose decision, "if not final, is rarely to be disturbed," *Packard Motor Co. v. NLRB,* 330 U.S. 485, 491, 67 S.Ct. 789, 91 L.Ed. 1040 (1947), . . . *South Prairie Construction Co. v. Local 627, International Union of Operating Engineers,* 425 U.S. 800, 805, 96 S.Ct. 1842, 1844, 48 L.Ed.2d 382 (1976). To set aside a Board certified unit, the employer must establish that the designated unit is clearly not appropriate. A showing that some other unit would be appropriate is insufficient, for a choice among appropriate units is within the discretion of the Board. *NLRB v. Fidelity Maintenance & Construction Co.,* 424 F.2d 707, 709 (5th Cir. 1970).

The immediate problem presented by this case is how the Board determination of an appropriate unit here can be squared with two similar cases, not mentioned in its decision, which reached an opposite result. *Sears, Roebuck & Co.,* 220 N.L.R.B. 1224, 90 L.R.R.M. 1331 (1975) (*Sears I*); *Sears, Roebuck & Co.,* 222 N.L.R.B. 476, 91 L.R.R.M. 1232 (1976) (*Sears II*).

After study, we think the Board order can be enforced, given the need for judicial deference to administrative discretion, and the "factual situations peculiar to the employer and unit at issue," *NLRB v. WKRG–TV,* 470 F.2d 1302, 1311 (5th Cir. 1973), whether or not a contestant could successfully defeat enforcement of an order that treated identical cases differently without articulating a policy change or other express reason for so doing.

The test which the Board applies in choosing a bargaining unit is "community of interest." *NLRB v. Belcher Towing Co.,* 284 F.2d 118, 121 (5th Cir. 1960). The goal is to create a viable bargaining unit. To do that, the Board looks to such factors as bargaining history, operational integration, geographic proximity, common supervision, similarity in job function, and degree of employee interchange. *NLRB v. Sunnyland Refining Co.,* 474 F.2d 407, 409–410 (5th Cir. 1973); *Air Reduction Co.,* 127 N.L.R.B. 410, 412 (1960). "Plant clericals" are

normally included with manual laborers in a production and maintenance unit, *Western Gear Corp.,* 160 N.L.R.B. 272, 274 (1966), and "office clericals" are not, *NLRB v. Mar Salle, Inc.,* 138 U.S.App.D.C. 135, 425 F.2d 566, 569 (1970).

The excluded clerical employees in this case fall into two categories: "data processing employees," who operate computers that produce documents regulating the flow of merchandise in and out of the warehouse, and "records office employees," who deal with financial accounts, mail service, scheduling common carriers, and monitoring the security console. In the *Sears* cases, the Board included clerical employees whose job functions were virtually identical. In all three instances, the clerical employees earn hourly wages, play a crucial role in the movement of merchandise in and out of the warehouse, and do no manual labor.

The Penney data processing employees, however, unlike those clericals with Sears, are geographically separated from the warehouse laborers. They work on a separate floor, have a separate break room, wear distinctive badges and are subject to tight security controls. Manual laborers are usually not allowed in the data processing area, and the data processing employees have contact with the warehouse only through their respective unit heads.

The Penney records office employees also work in an environment distinguishable from that of the Sears clericals. Their office is separated from the warehouse and is located near management offices. They have their own lunch room. They do little work in the warehouse, and their primary contact with warehouse laborers is in the records office. They do not have "counterparts" in the warehouse, and so they are unlike the "merchandise control office clericals" in *Sears II.* Their immediate supervisor does not supervise warehouse laborers, which distinguishes them from both the "warehouse clericals" in *Sears I* and the "receiving clericals" in *Sears II.* The records office employees must have special clerical and mathematical skills.

Taken as a whole, these factors sufficiently support a Board determination that the "community of interest" found to be determinative in *Sears I* and *Sears II* was lacking in this case. That conclusion is bolstered by *NLRB v. Target Stores, Inc.,* 547 F.2d 421 (8th Cir. 1977), in which the Eighth Circuit, without discussing the *Sears* precedents, upheld a decision excluding similar clericals from a bargaining unit.

### Union Misconduct

 Penney also claims that union misconduct during the election invalidates the results, and the Board erred in denying a hearing on its charges.

In policing elections, the Board enjoys wide discretion. *NLRB v. Muscogee Lumber Co.,* 473 F.2d 1364, 1366 (5th Cir. 1973). The burden is on the company to show the election was not fairly conducted. *Federal Electric Corp. v. NLRB,* 539 F.2d 1043, 1044 (5th Cir. 1976).

The company points to an incident in which a union officer implied the union had support among the police, and it complains of four rumored threats which circulated among the employees.

Despite the close margin of the election, however, the Regional Director and the Board acted within their authority in determining the incident and threats did not interfere with employees' free choice "to such an extent that they materially affected the results of the election." *NLRB v. Golden Beverage Co.,* 415 F.2d 26, 30 (5th Cir. 1969). None of the threats were made by persons directly associated with the union, and some were counter-acted by company statements. Furthermore, an allegedly misleading handbill distributed by the union was susceptible to the interpretation that it did no more than assert a tough bargaining stance would be taken and would prevail. It did not so lower the standards of campaigning as to prevent the uninhibited desires of employees from being determined in an election. *Contract Knitter, Inc. v. NLRB,* 545 F.2d 967, 971 (5th Cir. 1977); *NLRB v. Muscogee Lumber Co., supra* at

1367–1368. Because the union election conduct did not breach the guidelines of *Hollywood Ceramics, Inc.,* 140 N.L.R.B. 221, 224 (1962), there is no need to consider the less restrictive standards established by *Shopping Kart Food Market, Inc.,* 228 N.L.R.B. 190, 94 L.R.R.M. 1705 (1977).

### Board Due Process

■ The company had a full chance to submit evidence to the Regional Director and to file objections with the Board. The Board's conclusion that it had not raised "substantial and material factual issues" calling for a hearing, 29 C.F.R. § 102.69(f) (1976), did not deny due process. *See NLRB v. Handy Hardware Wholesale, Inc.,* 542 F.2d 935 (5th Cir. 1977), *petition for cert. denied,* —— U.S. ——, 97 S.Ct. 2675, 53 L.Ed.2d 271 (1977); *Bush Hog, Inc. v. NLRB,* 420 F.2d 1266, 1269 (5th Cir. 1969).

ENFORCED.