**VICKSBURG HOSPITAL, INC.,
Petitioner Cross-Respondent,**

v.

**NATIONAL LABOR RELATIONS
BOARD, Respondent
Cross-Petitioner.**

**No. 80–3676.**

United States Court of Appeals,
Fifth Circuit.
Unit A

Aug. 21, 1981.

Louis A. Fuselier, Frank M. Holbrook, Jackson, Miss., for petitioner cross-respondent.

Elliott Moore, Deputy Assoc. Gen. Counsel, Susan L. Dolin, NLRB, Washington, D.C., for respondent cross-petitioner.

Charles M. Paschal, Jr., Reg. Director, New Orleans, La., for other interested parties.

Before REAVLEY, RANDALL and SAM D. JOHNSON, Circuit Judges.

REAVLEY, Circuit Judge:

Vicksburg Hospital, Inc. has petitioned this court for review of an order of the National Labor Relations Board finding it guilty of unfair labor practices in refusing to bargain with the union certified by the Board to represent its employees. The Board has cross applied for enforcement of its order. We grant the request for enforcement.

I. *The Background Facts*

Petitioner is a non-profit hospital engaged in the delivery of health care services in Vicksburg, Mississippi. On September 10, 1979, Local Union 1964 of the United States Brotherhood of Carpenters & Joiners of America, AFL–CIO petitioned the Board for certification as the exclusive bargaining agent for a unit composed of Vicksburg Hospital's nonprofessional service, maintenance, and technical employees, excluding business office clerical employees, supervi-

sors, and professional employees.[1] The hospital took the position that the proposed unit of all service, maintenance and technical employees was overbroad and urged that four separate units consisting of service and maintenance employees, technical employees, business office and clerical employees, and professional employees would be appropriate. After a hearing, the regional director issued a decision and direction of election, finding that the unit of service, maintenance and technical employees was appropriate for collective bargaining. The hospital filed a timely request for review of the regional director's decision, which was denied by the Board. An election was subsequently conducted among the employees in the unit. From the 230 employees who were eligible to vote, 148 votes were cast in favor of the union, and 66 votes were cast against it. Fifteen ballots were challenged, which was an insufficient number to affect the election.

Vicksburg Hospital filed objections to the election, contending that the union offered economic inducements to employees who supported it by waiving initiation fees, that it misrepresented to employees various conditions of employment and their rights in the event of strikes, and that it misrepresented the Government's role in the election by leading employees to believe that the Board supported the union in the election. Thereafter, the regional director issued a supplemental decision and certification of representation in which he overruled the objections to the election, denied the hospital's request for an evidentiary hearing, and certified the union as the exclusive bargaining representative for the employees in the unit. The hospital applied to the Board for review of the regional director's supplemental decision and for reconsideration of the previous ruling on the appropriateness of the unit. The Board denied the application for review on April 2, 1980.

The hospital refused to bargain with the union in order to challenge its certification as bargaining representative on the grounds that the bargaining unit of service, maintenance and technical employees was inappropriate and that conduct by the union had destroyed the "laboratory conditions" for a free election. A complaint was issued against the hospital, alleging a refusal to bargain in violation of §§ 8(a)(5) and (1) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(5) and (1). In answering the complaint, the hospital admitted the refusal to bargain, but denied it had committed an unfair labor practice, contending that the bargaining unit was inappropriate and that the union had engaged in impermissible conduct prior to the election. The general counsel filed a motion for summary judgment with the Board.

On August 11, 1980, the Board issued its decision and order granting summary judgment in favor of the general counsel and against Vicksburg Hospital.[2] The Board determined that the issues raised by the hospital had been previously decided and resolved against it in the underlying representation case and that the hospital had not presented any newly discovered evidence or made a showing of special circumstances requiring a reexamination of the Board's rulings in the representation case. The Board, therefore, determined that there were no material issues of fact to be litigated in the unfair labor practice proceeding and, accordingly, held that the hospital had violated §§ 8(a)(5) and (1) of the National Labor Relations Act by its refusal to bargain with the certified representative of the employees in the unit found appropriate. The Board's order requires the hospital to bargain with the union as the exclusive representative of all employees in the appropriate unit and to embody any understanding reached in a signed agreement.

1. The parties stipulated that registered nurses would be considered professional employees and, thus, would not be included in either broad unit of service, maintenance and technical employees or a separate unit of technical employees.

2. The Board's decision is reported at 251 NLRB No. 3 (1980).

II. *Appropriateness of the Bargaining Unit*

Section 9(b) of the National Labor Relations Act, 29 U.S.C. § 159(b), directs the Board to "decide in each case . . ., in order to assure to employees the fullest freedom in exercising the rights guaranteed by this Act, the unit appropriate for purposes of collective bargaining . . . ." In making this determination, "[t]he Board is not by statute required to choose *the most* appropriate bargaining unit, only to select a unit appropriate under the circumstances." *NLRB v. Southern Metal Service, Inc.*, 606 F.2d 512, 514 (5th Cir. 1979) (emphasis in original). Moreover, "[t]o set aside a Board certified unit, the employer must establish that the designated unit is clearly not appropriate. A showing that some other unit would be appropriate is insufficient, for a choice among appropriate units is within the discretion of the Board." *NLRB v. J. C. Penney Co., Inc.*, 559 F.2d 373, 375 (5th Cir. 1977). As was stated in *NLRB v. Southern Metal Service*,

> "[t]his Court's standard of review is 'exceedingly narrow' in a challenge to the Board's determination of an appropriate bargaining unit. *NLRB v. Fidelity Maintenance & Construction Co.*, 424 F.2d 707, 709 (5th Cir. 1970). The Board's decision 'involves of necessity a large measure of informed discretion,' and 'is rarely to be disturbed.' *Packard Motor Car Co. v. NLRB*, 330 U.S. 485, 491, 67 S.Ct. 789, 793, 91 L.Ed. 1040 (1947). The decision will not be set aside unless the Board's discretion has been exercised 'in an arbitrary or capricious manner.' *Spartans Industries, Inc. v. NLRB*, 406 F.2d 1002,

1005 (5th Cir. 1969); *see J. C. Penney*, 559 F.2d at 375."

606 F.2d at 514.

Despite the limited nature of judicial review available in such a case, Vicksburg Hospital argues that the Board's determination of an appropriate bargaining unit consisting of all service, maintenance and technical employees was arbitrary, capricious and an abuse of discretion because it was inconsistent with the Board's prior decisional rulings dealing with health care institutions. Specifically, the hospital objects to the inclusion of technical employees (predominantly licensed practical nurses) in the same bargaining unit with service and maintenance employees. In support of its position, the hospital cites Barnert Memorial Hospital Center, 217 NLRB 775, 89 LRRM 1083 (1975), in which the Board indicated that, in reference to health care institutions, it would not normally compel the inclusion of technical employees in the same bargaining unit with service and maintenance employees.[3] *Accord*, Jewish Hospital of Cincinnati, 223 NLRB 614, 91 LRRM 1499 (1976).

The hospital argues that the regional director, in his decision on an appropriate bargaining unit, relied solely on the traditional "community of interest" criteria, *see NLRB v. J. C. Penney Co.*, 559 F.2d at 375, and failed to articulate a satisfactory reason for deviating from the Board's established policy of "not normally compel[ling] the inclusion of technical employees in a unit composed of service and maintenance employees." *Jewish Hospital of Cincinnati*, 223 NLRB at ___, 91 LRRM at 1505. Although not citing *Barnert* or expressly stating why he was disregarding the Board's

---

**3.** In *Barnert*, the Board stated:

"In the health care field, as illustrated by those employees we find are technical employees below [*i. e.* licensed practical nurses, operating room technicians, X-ray technicians, EKG and EEG technicians, respiratory care technicians, orthopedic technicians, and the like], we find continuing reason to approve separate units of technical employees. Thus, the kinds of employees we would include in the technical unit are those whose specialized training, skills, education and job

requirements establish a community of interest not shared by other service and maintenance employees. This separate community of interest is frequently evidenced by the fact that such employees are certified, registered, or licensed. However, we also find employees may not meet such standards without having been certified, registered, or licensed, and, if they do, we shall include them in the technical unit."

217 NLRB at ___, 89 LRRM at 1086.

policy of not normally including technical employees in the same unit with service and maintenance employees, the regional director indicated that "[w]hen technical employees share a substantial community of interest with service and maintenance employees, a combined service, maintenance and technical employees unit is an appropriate unit." In support of this conclusion, the regional director cited *Appalachian Regional Hospitals, Inc.,* 223 NLRB 542, 96 LRRM 1528 (1977); *National G. South, Inc., d/b/a Memorial Medical,* 230 NLRB 976, 95 LRRM 1478 (1977); and *Mount Airy Foundation d/b/a Mount Airy Psychiatric Center,* 217 NLRB 802, 89 LRRM 1067 (1975). In each of these cases, the Board found a combined unit of service, maintenance and technical employees to be appropriate. Moreover, the *Barnert* decision was cited and discussed in *Mount Airy,* 217 NLRB at ____ n.2, 89 LRRM at 1068 n.2. We conclude, therefore, that the regional director was well aware of the Board's policy of not normally including technical employees in the same unit with service and maintenance employees, as was the Board when it denied

the hospital's request for review of the regional director's decision, and that he, and the Board by denying the request for review, consciously determined that a combined unit of service, maintenance and technical employees would be appropriate under the circumstances of this case.

■ The hospital contended that technical employees should constitute a separate bargaining unit because their specialized skills, training, education and job requirements establish separate and distinct community of interests not shared by service and maintenance employees. The regional director found, however, that "many of the employees whom the Employer would place in a separate technical unit work in close association with and share common supervision with employees it would place in the service and maintenance unit."[4] He also found that the hospital's service and maintenance employees shared integrated job functions with, and have substantial and frequent contact with, those employees the hospital would place in a separate technical unit.[5] Given these findings,[6] we cannot say

4. For example, the regional director noted that "in the radiology department, the Employer would place the radiologic technologist and radiologic technicians in a technical unit but would place the radiology receptionist in the service and maintenance unit. The radiology receptionist works in the same area with, and has day-to-day contact with, other radiology department employees including the technologists and the radiologist. The receptionist is also under the immediate supervision of the chief technologist. Similarly, in the department of pathology laboratory, the Employer would include the histologic technician and lab technicians in a technical employee unit but would place the pathology secretary in a service and maintenance unit. The record reveals that the pathology secretary works in day-to-day contact with the laboratory employees and is directly supervised by the pathologist. The record also establishes that relatively low-skill histologic technicians (no college or technical school education requirement, one year on the job training) work side-by-side with the more highly skilled medical lab technicians (who possess a minimum of 2 years training, an associate degree, and 6 months training in a supervised laboratory)."

5. In his decision, the regional director stated:

"The record shows that nurses aides and orderlies, as well as all nursing personnel, perform the Employer's simple housekeeping work such as changing of bed linens and assisting patients to their rooms. The record further reflects that the nursing personnel perform such work to the same extent as orderlies and aides. The record also establishes that nurses aides work along with and can, through on the job training, become surgical technicians. The record shows that the admissions clerk (who is assigned to an office job) is in day-to-day contact and works together with nurses in the patient care areas throughout the hospital. Similarly, the radiology receptionist has day-to-day contact with radiology technicians, patients, nurses aides, and LPNs. As an example of common supervision of a large number of technical and non-technical employees, the record reflects that both the 50 LPNs, whom the Employer contends are technical employees, and the 55 nurses aides, whom both parties agree are service and maintenance employees, are under the supervision of the Head Nurse. When asked at the hearing about the frequency of daily contact among its employees, the Employer's Executive Director and Hospital Administrator testified that 'We're a small institution and there's always contact between employees.' The record shows that

that the Board's decision on a combined service, maintenance and technical employees' unit as being appropriate was inconsistent with its prior decisional rulings in the health care field. *See Appalachian Regional Hospitals*, 233 NLRB at ___, 96 LRRM at 1529; *Memorial Medical*, 230 NLRB at ___, 95 LRRM at 1481. Instead, we conclude that the Board determined the "commonality of interest" between the hospital's technical employees and its service and maintenance employees was sufficiently so pervasive as to override the separate and distinct community of interest among technical employees flowing from their training, education, skills, and certification, registration or licensing. *See Barnert*, 217 NLRB at ___ n.26, 89 LRRM at 1087 n.26.

Although the hospital has shown that a bargaining unit consisting of its technical employees would be appropriate, it has failed to establish that the combined unit of service, maintenance and technical employees is clearly *not* appropriate. Since we cannot conclude that the Board's decision, determining that the unit of service, maintenance and technical employees was appropriate, was made in an arbitrary or capricious manner, we must, therefore, defer to the Board's discretion.[7] Moreover, in finding that a single unit of service, maintenance and technical employees was appropriate, the regional director and the Board were mindful of the congressional mandate against undue proliferation of bargaining units in the health care industry. *See Alle-*

*gheny General Hospital*, 239 NLRB ___, 100 LRRM 1030 (1978).

### III. The Objections to the Election

The hospital raised three objections as a basis for invalidating the election in which the union won the right to represent its service, maintenance and technical employees: (1) that the union offered to waive initiation fees for employees who supported it; (2) that the union misrepresented to employees the nature of unfair labor practice strikes and their rights in the event of an economic strike; and (3) that the union led employees to believe that the Board supported it in the election. After reviewing the evidence submitted by the hospital in support of its contentions, the regional director, without conducting a hearing, issued a decision in which he determined that the objections were unfounded. The Board denied review of the regional director's decision.

"The Board has wide discretion in determining whether an election has been fairly conducted, and its decisions warrant special respect on review." *NLRB v. Claxton Manufacturing Co., Inc.*, 613 F.2d 1364, 1365 (5th Cir.), *modified*, 618 F.2d 396 (5th Cir. 1980). In order to gain the right to a new election, the hospital "has the entire burden of 1) offering 'specific evidence of specific events from or about specific people,' and 2) showing that these objectionable activities, 'when considered as a whole, either tended to or did influence the outcome of the election.'" *NLRB v. Klingler Electric Corp.,*

every employee at the Employer's hospital shares the same employee benefit programs, the same eating and restroom facilities, and the same parking facilities (except for supervisors)."

6. These findings are clearly supported by substantial evidence.

7. The hospital also challenged the Board's determination of the bargaining unit because the regional director stated that the parties were in agreement that a number of specific job classifications should be included in any bargaining unit found appropriate, and that this statement was contrary to the evidence. The hospital's contention that the certification of the union is invalid because the regional director misstated the parties' positions is totally without merit.

While the regional director erroneously stated at one place in his decision and direction of election that the employer and union agreed on the inclusion of relevant employee classifications "in any unit or units found appropriate," he did, in fact recognize that the parties only disagreed as to which of the employees are "properly includable in a service and maintenance unit, which are properly includable in a technical employee unit, or whether all belong in a broad service, maintenance, and technical employees unit." Since the regional director's decision dealt specifically with whether there should be separate units or a combined unit, it is clear that his erroneous statement had no impact on the ultimate decision and is harmless error.

656 F.2d 76, 85 (5th Cir. 1980) (citing *Claxton Manufacturing*, 613 F.2d at 1366). Establishing that the objectionable activities "either tended to or did influence the outcome of the election" is especially difficult where, as in the Vicksburg Hospital election, the union won by a wide margin.[8] *Klingler Electric*, 656 F.2d at 85 (citing *NLRB v. Sumter Plywood Corp.*, 535 F.2d 917, 924 (5th Cir. 1976), *cert. denied*, 429 U.S. 1092, 97 S.Ct. 1105, 51 L.Ed.2d 538 (1977)).

Although the Board has broad discretion in determining the fairness of employee elections, "this discretion is not unlimited. Due process requires the Board to grant 'a [post-election] hearing to a losing party who has supplied prima facie evidence raising substantial and material issues that would warrant setting the election aside.'" *Claxton Manufacturing*, 613 F.2d at 1365 (quoting *Gulf Coast Automotive Warehouse Co. v. NLRB*, 588 F.2d 1096, 1100 (5th Cir. 1979)) (brackets in original). Since we conclude that the evidence supplied by the hospital in support of its objections[9] was not sufficient, in and of itself, to warrant setting aside the election, the sole issue is whether the hospital presented prima facie evidence of election misconduct on the part of the union that would require the Board to grant the hospital a post-election hearing in which to prove its charges.

### A. *Waiver of Initiation Fees*

■ A union's offer to waive its initiation fees for those employees who sign authorization cards before an election is a basis for setting aside the ensuing election. *NLRB v. Savair Manufacturing Co.*, 414 U.S. 270, 94 S.Ct. 495, 38 L.Ed.2d 495 (1973). However, a union's offer to waive its initiation fees is permissible provided the waiver applies equally to all employees, whether they sign union membership cards before the election or afterwards. *NLRB v. Con-Pac, Inc.*, 509 F.2d 270, 272–73 (5th Cir. 1975).

In elaborating on the *Savair* doctrine, the Board has held that an ambiguous offer by the union to waive initiation fees, *i. e.* one which is "subject to a reasonable interpretation by the employees that they can avoid initiation fees by joining the Union prior to the election," *California State Automobile Association*, 214 NLRB 223, ____, 87 LRRM 1305, 1306 (1974), will constitute objectionable conduct warranting the setting aside of an ensuing election. *Id.*; *The Coleman Co., Inc.*, 212 NLRB 927, 87 LRRM 1004 (1974); *Inland Shoe Manufacturing Co.*, 211 NLRB 724, 86 LRRM 1498 (1974). The hospital argues that it presented evidence in support of its post-election objections showing that the union made an ambiguous offer to waive initiation fees so as to constitute an unlawful inducement under *Savair*. Among this evidence, the hospital produced affidavits of three employees and a pamphlet distributed by the union to the employees the day before the election.

The affidavit of employee "A" stated that he attended a meeting held by the union sometime in November of 1979 (the month preceding the election) and "at this meeting Curtis [the union representative] told us that if the union won the election we would not have to pay an initiation fee. This is all he said about it and there weren't no more questions about that." The affidavit of employee "B" indicated that she had attended a meeting conducted by the union approximately one month before the election. This employee stated:

> "Curtis also told me that the hospital did not have a union and if I joined now you do not have to pay any initiation fee because we do not have a union to join right now and if we get in on the ground floor we don't pay any initiation fees. Once the union come in you would have to pay the initiation fee if you join. When he told me this Curtis was speaking loud enough so everyone at the meeting could hear him say it."

---

**8.** Out of 230 eligible voters, the union received 148 votes in its favor, and 66 votes were cast against it.

**9.** *See* 29 C.F.R. § 102.69(a).

The affidavit of employee "C," which was submitted by the hospital in support of its objections,[10] indicates that the employee had a conversation with the union representative about three weeks before the election. The affidavit states:

"Curtis told me that one of the things that was being said was that we would have to pay an initiation fee and that was wrong because we would not have to pay an initiation fee but that we would have to pay dues. He said that we would not be required to pay an initiation fee because we don't make as much money as a carpenter."

The pamphlet received by the employees the day before the election states:

"Subject to your majority vote and 'certification' issued by the N.L.R.B.—an agency of the federal government—WE GUARANTEE TO YOU: . . .

5. You will have opportunity to join UBC without payment of initiation fees!"

In his supplemental decision, the regional director fully addressed the hospital's contention that the statements by the union representative, as related by the three bargaining unit employees, and the "guarantee" contained in the pamphlet were ambiguous and could have created the notion in the employees' minds that they had to join the union before the election in order for the initiation fees to be waived. The regional director noted that both employees "A" and "C" stated that the union representative had told them they would not have to pay an initiation fee. No conditions were attached to the waiver of initiation fees in the union representative's statements to these employees. With respect to the "guarantee," the regional director noted that it was not limited to any select group

of employees, e. g., those who supported the union prior to the election, but was made in general to the entire unit of employees. He further noted that the pamphlet, in addition to the statement "you will have opportunity to join [the union] without payment of initiation fees," indicated that "membership will be on a voluntary basis [and that] [i]f you are not satisfied with the benefits and representation, you are not obligated to join the union." Therefore, we conclude, as did the regional director, that the only potentially ambiguous offer to waive initiation fees, presented by the hospital, was contained in the affidavit of employee "B".

 Assuming that the statement offering to waive initiation fees for employees who "join right now" or "get in on the ground floor" was ambiguous and objectionable under *Savair*, the regional director concluded that the affidavits of employees "A" and "C" demonstrate that the scope of the union's waiver was sufficiently clarified to employees to render the colloquialisms "join right now" and "get in on the ground floor" unobjectionable. *See Evans Rotork, Inc.,* 242 NLRB No. 176, 101 LRRM 1333 (1979). The regional director also noted the contradictory nature of employee "B's" statement and concluded that it would be entirely unreasonable for an employee to have interpreted the phrases "join right now" and "get in on the ground floor" in a manner that would be objectionable under *Savair* because employee "B" stated that, in the same conversation, the union representative told her there was no union to join at the time. Because we find the regional director's decision to be "reasonable and based on substantial evidence in the record considered as a whole, our inquiry is at an end."[11] *Klingler Electric,* 656 F.2d at

---

10. This affidavit was not included in the record forwarded to this court. A portion of the affidavit was, however, quoted by the regional director in his supplemental decision, and the hospital has not challenged its accuracy before the Board or this court.

11. The hospital argues that in his decision, the regional director relied on statements from Curtis (the union's representative) that were

obtained during the regional director's ex parte investigation. In support of its argument, the hospital notes that the regional director quotes extensively from Curtis' ex parte statement regarding the union's policy on waiver of initiation fees and that portions of Curtis' statement seemingly conflict with affidavits supplied by the hospital. Hence, the hospital contends that the regional director made credibility determinations between Curtis' statement and the affi-

76. Moreover, we conclude that the hospital has completely failed in its burden to show that the offer to waive initiation fees, as recounted by employee "B", either had the tendency to or actually did influence the outcome of the election, which the union won by a wide margin.[12] *See Claxton Manufacturing*, 613 F.2d at 1366, 1370–71. We hold, therefore, that the hospital was not entitled to a post-election hearing on the waiver of initiation fees issue because it failed to present prima facie proof of facts sufficient to invalidate the election under *Savair*.

### B. *The Asserted Misrepresentations*

An election will be set aside "only where there has been a misrepresentation ... which involves a substantial departure from the truth, *at a time which prevents the other party or parties from making an effective reply*, so that the misrepresentation, whether deliberate or not, may reasonably be expected to have a significant impact on the election." *Hollywood Ceramics*, 140 NLRB 221, 224, 51 LRRM 1600, 1601 (1962), *quoted in General Knit of California*, 239 NLRB 619, ——, 99 LRRM 1687, 1688 (1978) (emphasis added); *see also NLRB v. Bancroft Manufacturing Co.*, 516 F.2d 436, 443 (5th Cir. 1975), *cert. denied*, 424 U.S. 914, 96 S.Ct. 1112, 47 L.Ed.2d 318 (1976).

The hospital contends that the union made material misrepresentations regarding strikes. In support of its allegations, it presented employee affidavits which showed that the union's representative misrepresented the nature of unfair labor practice and economic strikes.[13] The regional director concluded, however, that these misrepresentations were sufficiently rebutted by the hospital through a speech made by its administrator and by a letter to the employees.[14] In his supplemental decision, the regional director wrote:

"Accordingly, the undersigned finds that in the speech delivered December 3, 1979, the Employer dwelt at length with respect to pay and benefits during an economic strike. In its December 3, 1979 letter to its employees ... the Employer emphasized in paragraph 4 that 'the people who were out because of these strikes drew no wages from from their employer. They lost money every day the strike lasted.' "

 Because the hospital had ample opportunity to, and did on several occasions, reply to the union's misrepresentations, the regional director concluded that the misrepresentations did not warrant setting aside the election. We agree.

---

davits supplied by it. While we agree that "[i]f there is any credibility issue on a point sufficient to invalidate the election, a hearing is required," *Klingler Electric*, 656 F.2d at 83 (citing *Claxton Manufacturing*, 613 F.2d at 1366–67), it is clear from the regional director's decision that he relied solely on the "guarantee" in the pamphlet, the affidavits of employees "A" and "C," and the internal inconsistency of employee "B's" affidavit.

12. This conclusion is inescapable in view of the fact that the hospital had either adequately responded to, or perhaps precipitated, the waiver of initiation fees issue. In its campaign literature, distributed to the employees near the end of November 1979, the hospital noted that the union's bylaws required a $200 initiation fee. In addressing the employees in this literature, the hospital asserted that

"[u]nion salesmen may try to tell you that you can get in 'free' if you join up right away. WATCH OUT FOR THIS BARGAIN! Once the union organizers get control over you,

they can find lots of ways to make you *pay* and *pay* and *pay* whether you like it or not."

13. Curtis (the union representative) distorted the distinctions between unfair labor practice and economic strikes by asserting to employees assembled at a union meeting that, if employees went on strike to protest the hospital's failure to agree to what the employees considered reasonable terms, the employees could go out on an unfair labor practice strike. The thrust of Curtis' remarks was that any time employees went on strike to force an employer to agree to economic demands, the strike would be an unfair labor practice strike and that, upon return from such a strike, the hospital would have to give employees back pay for the time they were off. This is not the law. *See, e. g., National Fresh Fruit & Vegetable Co. v. NLRB*, 565 F.2d 1331, 1337 (5th Cir. 1978).

14. The administrator's affidavit and the letter were submitted by the hospital in support of its objections.

The hospital also contends that the union created the false impression that the Board supported it in the election. In support of this allegation, the hospital relies on a leaflet circulated by the union as well as a letter from and a statement by the union representative. The leaflet is headed by the caption: "STAND UP FOR YOUR RIGHTS. IT'S YOUR RIGHT TO HAVE A UNION." The leaflet then depicts a figure of Uncle Sam standing behind a man wearing a button bearing the word "Union," with a caption underneath reading, "REMEMBER UNCLE SAM STANDS BEHIND YOU." The leaflet also shows another figure of Uncle Sam pointing a finger, with the caption underneath reading, "Here's The Law," accompanied by an arrow directing the reader to the reverse side. The reverse side of the leaflet states in large, bold letters, "YOUR RIGHT TO JOIN THE UNION IS PROTECTED BY THE U.S. GOVERNMENT"; then portions of the National Labor Relations Act are set forth with explanations of what the Act's provisions mean.

 Conduct by a union which creates the impression that the United States Government encourages employees to organize and join the union constitutes a sufficient basis to warrant setting aside an election. *See Tyler Pipe Industries, Inc.*, 447 F.2d 1136 (5th Cir. 1971) (where the election was set aside because the union distributed a handbill stating ". . . the United States Government STRONGLY URGES employees to organize . . ."). In this case, however, the role of the government was not misrepresented by the leaflet. As noted in the regional director's supplemental decision, the thrust of the leaflet is to explain the meaning of the employees' rights under §§ 7 and 8(a) of the National Labor Relations Act. We agree with the regional director's conclusion that the leaflet did not exceed the bounds of permissible campaign propaganda because it did not suggest that the government encourages employees to organize, nor did it suggest that the government endorses the union. Instead, the leaflet merely conveyed that the government protects the right to join a union.

The hospital also asserts that a verbal statement by the union representative created a false impression that the Board had endorsed the union in the election. This verbal statement was recounted in an employee's affidavit:

"[The union representative] got into the meeting that [the hospital administrator] had for employees at the hospital where he stated that [the administrator] said if the union comes in the slate will be wiped clean and start afresh, this is a lie, he cannot take any benefits away from you employees. He said he is backed up by the National Labor Relations Board."

In his supplemental decision, the regional director stated:

"The evidence disclose[d] that the Employer made employees aware that benefits can be bargained away during the course of collective bargaining while the [union] made them aware that the Employer cannot unilaterally take away benefits presently enjoyed by the employees. The undersigned therefore concludes and finds the statements made with respect to benefits amount to mere campaign puffery and do not exceed the bounds of permissible campaign propaganda."

We agree. We also conclude that the leaflet and the union representative's statements taken together do not create the impression of endorsement of the union by the Board.

 The hospital also points to a letter sent by the union to the hospital administrator, complaining about an employee who made anti-union remarks in the emergency room. The letter complained about the hospital's failure to enforce a no-solicitation rule and asserted that "your refusal to treat all employees fairly and equally in the administration of hospital rules and policies has resulted in a violation of the National Labor Relations Act." A copy of the letter was mailed to the Board. Because the hospital neither alleged nor showed that the union made the employees aware of the letter, we are unable to find that the letter

created any possible impression of Board sponsorship for the union.

We conclude that no post-election hearing was required for the alleged union misrepresentations because the regional director assumed the truth of the allegations raised by the hospital's evidence and found those facts insufficient to warrant setting aside the election. *See Klingler Electric,* 656 F.2d at 88.

Vicksburg Hospital's petition for review is DENIED, and the request of the National Labor Relations Board for enforcement of its order is GRANTED.