NATIONAL LABOR RELATIONS BOARD, Plaintiff-Appellee,

v.

G.H.R. ENERGY CORP., G.H.R. Companies, Inc., TCP Construction Co., TCP Engineering and Construction Co., Inc., John R. Stanley, Howard K. Schwamb, Frank Elvin, Louis Verbick, Defendants-Appellants.

No. 81–3765.

United States Court of Appeals, Fifth Circuit.

Oct. 7, 1982.

Meagher & Hrebek, Robert J. Hrebek, Manasquan, N.J., for GHR, Stanley, Schwamb, & Elvin.

Partee & Waldrip, John B. Waldrip, New Orleans, La., for TPC and Verbick.

Aileen A. Armstrong, Robert I. Tendrich, Richard A. Cohen, N.L.R.B., Washington, D.C., for plaintiff-appellee.

Before RUBIN, RANDALL and JOLLY, Circuit Judges.

PER CURIAM:

This case comes before us on the appeals of GHR Energy Corp. and GHR Companies, Inc. (collectively "GHR"), TCP Construction Co. and TCP Engineering and Construction Co., Inc. (collectively "TCP"), John R. Stanley, Howard K. Schwamb, Frank Elvin, and Louis Verbick from an order of the United States District Court for the Eastern Dis-

trict of Louisiana. The district court's order enforced subpoenas *duces tecum* and *ad testificandum* issued under section 11 of the National Labor Relations Act. 29 U.S.C. § 161 (1976 & Supp. IV 1980) (the "Act"). The issue presented is whether the district court abused its discretion in enforcing the subpoenas. Finding that it did not, we affirm.

These proceedings arise indirectly out of an eight-count complaint brought by the General Counsel of the National Labor Relations Board against GHR and TCP. (The complaint was based on charges filed by the Oil, Chemical & Atomic Workers International Union and its local, Local 4–447.) The most important part, for our purposes, alleged that the two companies constituted a "single integrated business enterprise and single employer within the meaning of the Act" and that an appropriate unit for collective bargaining consists of certain employees employed by GHR and TCP.

On August 26, 1981, almost a full month before the scheduled date of the unfair labor practice hearing, the Board's New Orleans (Region 15) office served the disputed subpoenas *duces tecum* on the two companies; a day later it served the contested subpoenas *ad testificandum* on three GHR officials—President John R. Stanley, Vice President of Engineering and Construction Howard K. Schwamb, and Vice President of Refining Frank Elvin. On the day the second subpoena was served, the Board's counsel also notified counsel for the two companies that he would like to meet with them at a mutually convenient time and place to inspect the subpoenaed material and to discuss the entering of appropriate stipulations. Six days later, on September 1, the Board served GHR with a new subpoena *duces tecum*. The new subpoena differed from the old primarily in that it permitted GHR to furnish signed statements in lieu of certain of the original records. Then, on September 15, the Board served a subpoena *ad testificandum* on President

Louis Verbick of TCP, also directing him to appear at the unfair labor practice hearing. The administrative law judge charged with ruling on the contested subpoenas denied the companies' motion to revoke all four of them.

The unfair labor practice hearing duly began on September 21. After counsel for the Board explained that most of the requested documents and testimony pertained to the "single employer" allegation, the administrative law judge advised the parties that they had to "understand that all of [the] attributes and elements of a business enterprise have to be laid out in order to establish these allegations," and that the only way of getting the necessary information was from the companies themselves. Counsel for the Board offered to compromise, and stated that he had "no objection to reviewing the documents" at the companies' places of business. He also offered to work out a convenient schedule for the live testimony so that the four company officers would not have to waste time attending the entire hearing. The administrative law judge briefly adjourned the proceedings so that the parties could work out an accommodation; however, when the hearing resumed, counsel for both companies indicated that their clients would neither negotiate nor comply with any of the subpoenas. The hearing was then indefinitely adjourned to allow the Board to seek enforcement of its subpoenas in the district court.[1]

The district court hearing was held on November 4. Counsel for the Board reiterated that he intended to inspect and copy the subpoenaed records where they were kept so that the two companies would be spared the expense of transporting them to the hearing. The court then rejected the companies' arguments that the subpoenas were overbroad and too burdensome, and issued an order requiring TCP, GHR, and the four company officers to comply. The court stayed its order pending the outcome of this appeal.

1. Section 11(2) of the Act, 29 U.S.C. § 161(2) (1976), vests the power to enforce Board sub-poenas in the district courts.

■ Subpoenas from the Board are subject to extremely limited judicial review. A district court is required to uphold a subpoena if "production of the evidence . . . called for by the subpoena . . . relate[s] to a 'matter under investigation or in question,' " *NLRB v. Williams,* 396 F.2d 247, 249 (7th Cir.1968) (quoting NLRA § 11(1), 29 U.S.C. § 161(1)), and if that evidence "is described with 'sufficient particularity,' " *NLRB v. ITT Telecommunications,* 415 F.2d 768, 769 (6th Cir.1969) (citing *Cudahy Packing Co. v. NLRB,* 117 F.2d 692 (10th Cir. 1941)). *See* NLRA § 11(1), 29 U.S.C. § 161(1) (1976) (establishing same standard for Board confirmation of its own subpoenas); *Endicott Johnson Corp. v. Perkins,* 317 U.S. 501, 509, 63 S.Ct. 339, 343, 87 L.Ed. 424 (1943) (agency's subpoena must be enforced by district court as long as it is not "plainly incompetent or irrelevant to any lawful purpose"). *See also Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186, 208–09, 66 S.Ct. 494, 505, 90 L.Ed. 614 (1946) (agency subpoena must be reasonably particular and reasonably relevant to agency's lawful investigation). We, in turn, must affirm the district court's enforcement order unless we find that the court has abused its discretion. *See, e.g., NLRB v. Consolidated Vacuum Corp.,* 395 F.2d 416, 419–20 (2d Cir.1968); *NLRB v. Friedman,* 352 F.2d 545, 547 (3rd Cir.1965); *Shotkin v. Nelson,* 146 F.2d 402, 404 (10th Cir.1944) ("Whether a subpoena duces tecum should be enforced is in the first instance a question for the trial court, and its decision should not be disturbed on appeal unless it clearly appears it is arbitrary and finds no support in the record."). Our standard of review, in short, requires us to reverse the district court's decision to enforce the subpoenas only in the most extraordinary of circumstances.[2]

We find that the facts of the present case do not even approach the extraordinary.

GHR and TCP direct their most vigorous arguments against the subpoenas *duces tecum.* They claim, first, that the subpoenas were insufficiently particular and irrelevant to the Board's unfair labor practice case, second, that the subpoenas were so broad that they were overly burdensome, and third, that the Board is unlawfully using subpoenas for general discovery purposes. For the reasons set out below, we find merit in none of these arguments.

■ Although on a first reading some of the language in the subpoenas does seem fairly broad, we think that the problem lies not so much with "particularity" as with the nature of the underlying claims. GHR and TCP have put their entire business relationship into question by denying that they constitute a "single employer" for purposes of the Act and that certain employees of GHR and TCP constitute an appropriate unit. To determine whether two companies constitute a "single employer," the Supreme Court has held that a court must look at, among other things, "interrelation of operations, common management, centralized control of labor relations, and common ownership" or financial control. *See Radio & Television Broadcast Technicians Local Union 1264 v. Broadcast Service of Mobile, Inc.,* 380 U.S. 255, 256, 85 S.Ct. 876, 877, 13 L.Ed.2d 789 (1965), *quoted in South Prairie Construction Co. v. Local No. 627, Operating Engineers,* 425 U.S. 800, 802 n. 3, 96 S.Ct. 1842, 1843 n. 3 48 L.Ed.2d 382 (1976). Similarly, in determining the appropriate

---

2. Overlooking the fact that we may reverse the district court's orders of enforcement only if we find an abuse of discretion, TCP and GHR urge that we should apply—in addition to the standards applicable in the district court—the rules in Fed.R.Civ.P. 26 and 45(b). Both of these rules, as well as general equitable principles, the companies argue, are imported into Board subpoena disputes through language in the Board's own regulations: "The administrative law judge or the Board, as the case may be, shall revoke the subpena if in its opinion the evidence . . . [sought is not particularly described] or *if for any other reason sufficient in law* the subpena is otherwise invalid." Rule 102.31(b), 29 C.F.R. § 102.31(b) (1981) (emphasis added). For the same grounds as those given in the main body of this opinion, we find that even if we were to apply general equitable principles and the standards given in the Federal Rules of Civil Procedure, our reasoning and conclusions would remain the same. We therefore find it unnecessary to decide if the companies' argument is correct.

bargaining unit, the Board examines the "community of interest" among employees, *see NLRB v. Belcher Towing Co.,* 284 F.2d 118, 121 (5th Cir.1960), which means that the Board must look to "such factors as bargaining history, operational integration, geographic proximity, common supervision, similarity in job function, and degree of employee interchange." *NLRB v. J.C. Penney Co.,* 559 F.2d 373, 375 (5th Cir.1977) (citations omitted). In order to make these determinations, the Board must necessarily undertake a fairly wide-ranging investigation into the day-to-day affairs of the two companies.

■ We think that the Board has tailored its subpoenas as closely as possible to the exigencies of its case. It has, for example, requested the personnel records of all employees who have worked for both TCP and GHR. It has asked to see the recent financial reports of both companies, including any information on intercompany loans of cash, equipment, or employee services. Still another paragraph requests what amounts to all company policy statements on financial and labor matters—directors' minutes, rules and regulations, announcement letters, and the like. We cannot say, given the nature of the Board's unfair labor practice claims against the companies, that the trial court abused its discretion in upholding provisions such as these against a "particularity" attack.

We also think, again given the nature of the underlying claims, that the Board has made its subpoenas as easy to comply with as possible. At every stage of the proceedings, counsel for the Board stressed his willingness to compromise and negotiate. He stated that he would inspect all of the requested documents at the companies' places of business and he included "in lieu of" provisions in the subpoenas to enable the companies to submit signed statements instead of some of the original documents. Counsel for GHR and TCP, on the other hand, have consistently refused to cooperate. When faced with similar circumstances in *Jackson Packing Co. v. NLRB,* 204 F.2d 842, 844 (5th Cir.1953), this court af-

firmed the district court's enforcement order after having been given the Board's assurances that "the Board will make its examination at such times and place, and under such circumstances as will cause the least possible annoyance or interruption to appellants' business." We see no reason to depart from that reasoning here.

■ The mere fact that compliance with the subpoenas may require the production of thousands of documents is also insufficient to establish burdensomeness. In a case similar to the one before us today, one district court commented:

> While it may be true that these subpoenas will require the production of a large number of records and documents, it must be remembered that this investigation involves complaints by a substantial number of union members. The mere size of Respondent's operation is no excuse for its refusal to give information relative to possible unfair labor practices. It is presumed, by the very fact that Respondent has such a large number of employees, that it is sufficiently equipped to handle the records of its employees.

*NLRB v. United Aircraft Corp.,* 200 F.Supp. 48, 51 (D.Conn.1961), *aff'd mem.,* 300 F.2d 442 (2d Cir.1962). Given the nature of its case, the Board has done all that it reasonably could do to minimize the burdensomeness of its requests. We think that this is enough. The district court did not abuse its discretion in finding that the subpoenas were enforceable.

■ TCP and GHR also complain that the Board is illegally attempting to use subpoenas as a discovery device. This argument, like the rest of the appeal, is frivolous. Section 11 of the Act clearly provides that the Board shall have access to employer records "at all reasonable times," whether the records belong to one merely "being investigated" or to one already "proceeded against." 29 U.S.C. § 161(1) (1976). *See, e.g., NLRB v. Friedman,* 352 F.2d 545 (3d Cir.1965); *NLRB v. Lewis,* 310 F.2d 364 (7th Cir.1962) (post-complaint investigatory subpoenas upheld).

■ We also find that the district court did not abuse its discretion in upholding the subpoenas *ad testificandum.* Although TCP has not raised the issue of whether its president was properly subpoenaed, GHR vigorously argues that the subpoenas of its three officers are overly burdensome because they are issued "against virtually all of the management staff necessary and essential for the day to day functioning of the company." Brief for GHR at 5–6. We have already noted that counsel for the Board has offered to schedule the testimony for the most convenient times possible so that the company officers would not have to waste time attending the entire hearing. GHR's objection therefore amounts to little more than a desire not to have its officers testify at all. We think, however, that the fact that parties must comply with subpoenas is "incident to every sort of trial and [is] part of the social burden of living under government." *New Orleans Public Service, Inc. v. Brown,* 507 F.2d 160, 165 (5th Cir. 1975) (quoting *Bradley Lumber Co. v. NLRB,* 84 F.2d 97, 100 (5th Cir.1936), *cert. denied,* 299 U.S. 559, 57 S.Ct. 21, 81 L.Ed. 411 (1936)).

We also conclude that the trial court correctly applied the law and did not abuse its discretion in ordering that the subpoenas *duces tecum* and *ad testificandum* be enforced.

■ We conclude that Fed.R.App.P. 38, entitled "Damages for Delay," is applicable to the appeal and we award double costs to the Board.

AFFIRMED.